RAYIS v THE SHELBY MUTUAL INSURANCE COMPANY OF
SHELBY OHIO

1. Insurance—Instructions to Jury—Separate Defense Instructions—Fraudulent Procurement—Court Rules.

Fraudulent procurement of insurance and fraudulent proof of loss are separate and distinguishable defenses which may be raised in an action to recover losses under an insurance contract; a trial court may properly instruct the jury on both defenses of its own volition where general allegations of fraud have been made and there is evidence in the record to support each defense (GCR 1963, 516.2).

2. Insurance—Fraud—Elements of Fraud—Fraudulent Procurement—Fraudulent Proof of Loss—Justifiable Reliance.

Fraudulent procurement of insurance as a defense to a claim under an insurance contract requires proof of all of the normal elements of fraud while the defense of fraudulent proof of loss, or false swearing, does not have justifiable reliance as one of its elements.

3. Fraud—Elements of Fraud—Fraudulent Procurement—Wilfull Misrepresentations—Reliance.

To void a policy because the insured has wilfully misrepresented a material fact it must be shown that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time he made the representation or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it.

Appeal from Macomb, Raymond R. Cashen, J. Submitted October 6, 1977, at Detroit. (Docket No. 28204.) Decided January 4, 1978.

References for Points in Headnotes
[1] 44 Am Jur 2d, Insurance § 2060.
[2] 44 Am Jur 2d, Insurance § 1501.
[3] 44 Am Jur 2d, Insurance §§ 1501, 1946.

Complaint by Muayed M. Rayis against The Shelby Mutual Insurance Company of Shelby Ohio to recover the proceeds of a fire insurance policy. Judgment for defendant. Plaintiff appeals. Affirmed.

*Carol Dean,* for plaintiff.

*Denenberg, Tuffley & Thorpe,* for defendant.

Before: D. F. WALSH, P. J., and V. J. BRENNAN and BEASLEY, JJ.

V. J. BRENNAN, J. Plaintiff Muayed M. Rayis appeals a verdict of no cause of action determined by jury verdict in Macomb County Circuit Court, Judge Raymond R. Cashen presiding. The case came to trial on March 3, 1976. At the close of proofs, plaintiff and defendant moved for directed verdict; both motions were denied by the trial court. The case went to the jury, which returned its verdict of no cause of action. Plaintiff now appeals as of right under GCR 1963, 806.1.

The facts of this case bear statement. Plaintiff's cousin purchased a Hungry Jack Restaurant in East Detroit for $7,500 in June, 1974. Plaintiff then became his cousin's partner by reimbursing his cousin one-half of the $500 downpayment. Plaintiff then purchased his cousin's share for $40,000 on November 7, 1974, although a bill of sale was dated November 19, 1974. Plaintiff alleged his cousin's share was worth $40,000 because the business was returning substantial income. In addition, his cousin had told plaintiff "any time you don't make it just give it back to me". Plaintiff paid his cousin an initial installment of $5,000. The sale price of $40,000 did not include the building. Plaintiff leased the building.

When plaintiff and his cousin owned the restaurant as partners, they did not maintain insurance. Plaintiff applied for coverage with defendant on or about November 3, 1974. Plaintiff later received a policy with fire coverage for $40,000 and business interruption coverage for $20,000, the policy taking effect on November 7, 1974.

Plaintiff testified as to how he obtained his insurance policy from defendant. According to plaintiff's testimony, his initial contact with defendant's agent was by telephone. Plaintiff told the agent how much insurance he needed, the figure being in the vicinity of $40,000. Plaintiff did not disclose to the agent the amount he had paid for the business. At some point between this initial contact and the date the policy was delivered to plaintiff on November 21, 1974, the agent stopped by the restaurant to observe the premises.

Plaintiff received his copy of the policy on November 21, 1974. Early in the morning of November 29, 1974, the restaurant burned. The inside of the building was completely destroyed. Two five-gallon gasoline tanks, one round, one sqaure, were found in the building. The police lab test on various articles found in the restaurant showed the presence of gasoline. Police testimony indicated, "It was a set fire".

Plaintiff testified he was not familiar with the filing of an insurance claim; so he hired someone to assist him. Plaintiff signed a sworn proof of loss on February 5, 1975, after the preparer explained the procedure to him. Plaintiff claimed $40,000 in inventory and equipment loss and $20,000 business interruption, the full limits of the policy.

Defendant notified plaintiff by letter, dated March 4, 1975, that the insurance company would not accept plaintiff's proof of loss for six reasons,

among which were fraud and arson. Plaintiff filed suit in circuit court in April, 1975. Defendant alleged fraud and arson in its answer.

The damage issue was submitted to an appraiser, who determined plaintiff's actual losses to be $8,500 for equipment, $900 for inventory, and $2,400 for business interruption, making a total of $11,800. The case came to trial on March 3, 1976.

Plaintiff produced only two witnesses at trial, and he alone addressed the issues pertinent to this appeal. At the close of plaintiff's case, defendant moved for a directed verdict on two grounds, one being the substantial discrepancy between the amount claimed by plaintiff under the policy and the amount established by the appraiser as actual loss. After hearing plaintiff's argument, the trial court denied defendant's motion on the fraud question.

Defendant then presented three witnesses. Leroy Einkorn testified to plaintiff's appearance at his Marathon station on November 28, 1974, the night before the fire at plaintiff's restaurant, for the purpose of purchasing ten gallons of gasoline. He stated that plaintiff and another man carried the gasoline away in two five-gallon gas containers, one being round and the other being square. Defendant's other two witnesses were police officers who testified to the deliberate setting of the fire and the acceleration of the damage by the gasoline. At the close of its case, defendant again moved for a directed verdict, which was again denied.

Plaintiff then moved for a directed verdict on the basis that defendant had not submitted sufficient evidence to get to the jury on either fraud or arson. The trial judge denied plaintiff's motion, finding jury questions on both fraud and arson.

The trial judge instructed the jury on defendant's theory of the case as defendant had requested, including both the arson defense and the fraud defense. However, he also instructed on a third distinct defense, plaintiff's fraudulent procurement of the insurance policy. The trial court then explained the elements of each defense. Both parties had some objection to the trial court's charge, but neither party objected to the judge's statement that defendant had three defenses and his explanation of those defenses. The jury returned a verdict of no cause of action in defendant's favor.

On appeal, plaintiff raises a single allegation of error. He contends that the trial court erred reversibly in submitting the case to the jury with an instruction on plaintiff's fraudulent procurement of the insurance policy. We do not believe reversible error occurred.

We might observe at the outset that the fraudulent procurement defense was not specifically submitted by defendant in his proposed instructions, but was given by the trial court on the basis of the record evidence. Defendant thus contends the trial court erred in even instructing on this defense. With this proposition we do not agree. First of all, neither party objected specifically to the giving of the fraudulent procurement defense to the jury for consideration. This fact alone speaks strongly to affirming the trial court in its decision to submit the defense to the jury. *Hunt v Deming,* 375 Mich 581, 584–585; 134 NW2d 662 (1965). See GCR 1963, 516.2.

Nevertheless, we also find sufficient justification in the record for separating defendant's allegations of fraud into fraudulent procurement and fraudulent proof of loss. For instance, defendant isolates

such fraudulent procurement in his opening statement.[1] Consequently, we will not reverse the trial court simply because it distinguished the fraudulent procurement defense from fraudulent proof of loss. Fraudulent procurement has all the normal fraud elements, while fraudulent proof of loss, also called "false swearing", does not have justifiable reliance as one of its elements. See *Campbell v Great Lakes Insurance Co,* 228 Mich 636,638; 200 NW 457 (1924).

Having thus found the trial court was not in error by separating the defenses in its instructions, we must now decide if evidence of such procurement appeared to justify sending the defense as separated to the jury. Plaintiff has correctly conceded both the arson[2] and the fraudulent proof of loss[3] questions.

We hold that a jury-submissible case on fraudu-

[1] The transcript discloses the following statement by defense counsel in opening argument:

"* * * he wilfully over-valued his property within that restaurant, and he did it on two occasions.

"First, when he went down there to obtain the policy or when he obtained the policy, * * *."

[2] On the arson issue, proof that the fire was deliberately set was overwhelming. If the jury believed Einkorn's testimony that plaintiff and a companion purchased gasoline on the evening before the fire, they could properly have inferred plaintiff was the one who set the fire. One of the police officers testified that forcible entry had been made. One testified that no forcible entry occurred. See *Cipriano v Mercantile Insurance Co,* 284 Mich 346; 279 NW 855 (1938), holding that circumstantial evidence is sufficient to present a jury question on whether plaintiff had set a fire for which he claimed losses against an insurer. In *Cipriano,* the fact that the fire was clearly incendiary, together with evidence that outside doors had not been forced, was sufficient to present a jury question as to whether plaintiff land owner had set the fire or caused the fire to be set.

[3] Defendant also presented a jury submissible case on fraudulent proof of loss. Defendant could avoid payment if plaintiff was guilty of "false swearing", which includes the element that the swearing was false as well as wilful, knowing and with intent to defraud. *Campbell v Great Lakes Insurance Co, supra* at 638. The evidentiary rule for this defense is as follows: The mere fact that plaintiff's loss is determined to be less than his stated claim is not proof of fraud. In the usual case, the fact that plaintiff has overstated his loss creates a

lent procurement was established. The defense has been characterized in the following way:

> "To void a policy because the insured has wilfully misrepresented a material fact it must be shown that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time he made the representation or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it." *West v Farm Bureau Insurance Company of Michigan,* 63 Mich App 279, 282; 234 NW2d 485 (1975).

As noted, the element of justifiable reliance is what distinguishes fraudulent procurement from fraudulent proof of loss. *Bernadich v Bernadich,* 287 Mich 137, 143; 283 NW 5 (1938). Regarding fraudulent proof of loss, see *Campbell v Great Lakes Ins Co, supra* at 638.

We find evidence which would support inferences as to all the required elements in this case. We hold in the first instance that plaintiff's request for $40,000 coverage on the equipment and inventory of his restaurant constituted a misrepresentation of value.[4] Evidence of this fact could

---

question of fact for the jury. The jury then determines whether plaintiff's over-valuation was made in good faith or with intent to defraud the insurer. If the difference between the proof of loss and actual loss is negligible, the case should not be submitted to the jury. However, were the difference extreme, fraud may be inferred by law and the judge should direct a verdict for the insurer. *See* 14 Couch on Insurance 2d, § 49:576; Anno: *Overvaluation in Proof of Loss of Property Insured as Fraud Avoiding Fire Insurance Policy,* 16 ALR3d 774, §§ 24, 25. A jury question was created in this case simply by the showing that the appraiser had determined plaintiff's losses were $11,800, while plaintiff had filed a claim for $60,000.

[4] The record discloses the following testimony by plaintiff Rayis:

"Question: Did you know what kind of coverage were available to you if you wanted to by (sic) insurance at that time?

"Answer: Well, the only thing I know coverage would be for the equipment.

reasonably be drawn from plaintiff's testimony that his request for $40,000 coverage was based on the price he had paid his cousin.

We find the misrepresentation material in view of the appraiser's total property valuation of $9,400 for equipment and inventory subsequent to loss. Further, though the appraiser's valuation of the equipment and inventory cannot be taken as proof that plaintiff knew the representation he made to defendant was false, certainly the original sale price of $7,500 paid by plaintiff's cousin shortly before plaintiff's own purchase would provide a reasonable basis for an inference that plaintiff did knowingly misrepresent the true value of the property to defendant shortly afterward. Alternatively, no evidence was presented at trial which would prevent the inference that the representation was made recklessly and without any knowledge of its truth. Plaintiff made no showing that the $40,000 figure was based on fact. Even the purported sale price agreed upon by plaintiff and his cousin is left without testimony connecting this figure with any true cost basis. In short, the court committed no error by allowing the jury to infer plaintiff's knowledge of the falseness of this representation.

Regarding the element of reliance, we find that by specifically requesting the policy for $40,000 plaintiff intended that defendant would rely upon this figure in issuing its policy. We see no reason

---

"Question: Now, what did you say to your agent in terms of what you wanted?

"Answer: I told him give me a fire policy.

"Question: And did you tell him how much in terms of dollars?

"Answer: Yes. He asked me how much.

"Question: And what did you tell him?

"Answer: I said about $40,000.00.

"Question: And how did you arrive at the value of $40,000?

"Answer: Because I bought the share from my cousin for $40,000."

why defendant's investigation would have raised grave doubts as to a $40,000 figure on such a policy. An inference of defendant's reliance was justified.

We thus find substantial basis for the jury's inference of a fraudulent procurement defense. Evidence does appear which would allow an inference of such fraudulent procurement by the jury. As such evidence did exist, the trial court was not in error in submitting such a defense to the jury. The jury's verdict of no cause of action was justified. We find no reversible error.

Affirmed.