GIBSON v GROUP INSURANCE COMPANY OF MICHIGAN

Docket No. 71859. Submitted March 20, 1984, at Detroit.—Decided
March 14, 1985.

Following the destruction of his house by a fire, plaintiff, Eric
Gibson, brought an action in the Wayne Circuit Court against
defendant, Group Insurance Company of Michigan, seeking to
recover fire insurance proceeds on a homeowner's policy. Plain-
tiff alleged that defendant wrongfully and in bad faith refused
to pay his insurance claim. The insurer defended alleging that
plaintiff had misrepresented and concealed material facts, en-
gaged in fraud concerning the cause and origin of the fire and
intentionally overstated the amount of loss. Defendant's mo-
tions for a summary judgment and a directed verdict were
thereafter denied by the trial court, Thomas Roumell, J. The
jury thereafter returned a verdict of $87,333 in favor of the
plaintiff. The trial court entered a judgment for that amount
but included a setoff to the defendant of an amount paid out by
the defendant pursuant to the insurance contract to the mort-
gagee of the house for the unpaid mortgage balance. Plaintiff
appeals and defendant cross-appeals. *Held:*

1. Under the circumstances, plaintiff substantially performed
his obligation to cooperate with the insurer's investigation;
therefore, he did not forfeit his contractual rights by claiming
his Fifth Amendment privilege when asked about his financial
status at the time of the loss.

2. The trial court did not abuse its discretion in excluding
defendant's expert's testimony on valuation.

3. The trial court did not err in allowing plaintiff to testify
about the threats made against him by Robert Mason. Such
testimony was relevant and was not hearsay since it was
merely admitted to prove that the statements were made,

REFERENCES FOR POINTS IN HEADNOTES
[1] 17 Am Jur 2d, Contracts §§ 375, 376, 378.
[2] 29 Am Jur 2d, Evidence §§ 251, 260.
[3] 29 Am Jur 2d, Evidence § 497.
[4] 5 Am Jur 2d, Appeal and Error § 623.
     75 Am Jur 2d, Trial § 603.
[5] 43 Am Jur 2d, Insurance §§ 1042-1047.

rather than to prove the truth of the matter asserted. Evidence to the effect that Robert Mason was familiar with the techniques employed by arsonists and had some ability to execute the threats in the manner alleged was relevant to plaintiff's case and was properly admitted.

4. Defendant's assignments of instructional error are without merit.

5. The trial court did not err in its instructions by separating out the defense's case relating to fraud.

6. The defendant's claim that the trial court's instructions unduly emphasized the credibility of plaintiff's witnesses as compared to defendant's witnesses lacks merit.

7. Plaintiff had no legal interest in the unpaid mortgage balance; thus, the trial court properly reduced the judgment by this amount.

Affirmed.

1. Contracts — Substantial Performance — Forfeiture of Contract Rights.

Michigan follows the substantial performance of a contract rule in regard to the forfeiture of contract rights; a contract is substantially performed when all of the essentials necessary to the full accomplishment of the purposes for which the thing was contracted have been performed with such approximation that a party obtains substantially what is called for by the contract; deviations from the absolute terms of a contract generally do not necessarily cause a failure of performance but may entitle a party to extra compensation or damages; imperfections in the matters of details which do not constitute a deviation from the general plan do not prevent the performance from being regarded as substantial performance.

2. Evidence — Relevant Evidence — Exclusion of Evidence — Rules of Evidence.

A trial court has discretion to exclude relevant evidence where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury (MRE 403).

3. Evidence — Hearsay.

Testimony regarding statements made by another which is merely admitted to prove that the statements were made, rather than to prove the truth of the matter asserted, is not hearsay testimony (MRE 801[c]).

4. Jury — Jury Instructions — Appeal — Preserving Question.

The practice of a trial court's identifying the party requesting a

jury instruction has been criticized; however, the Court of Appeals will not set aside the jury's verdict following such identification where no objection was raised at trial.

5. INSURANCE — FIRE INSURANCE — PROCEEDS OF POLICY — MORT-GAGE-LOSS-PAYABLE CLAUSE — CONTRACTS — MORTGAGES — MORTGAGORS — PRIORITIES.

There is only one commitment to insure against fire loss in a fire insurance policy but where there is a mortgage-loss-payable clause in the policy of insurance there are two separate con-tracts governing to whom the proceeds of the insurance policy are to be given and for what purpose; the standard clause gives priority to insuring the mortgage debt making both the insured and his mortgage company real parties in interest under the insurance policy; a mortgagor's proceeds from such a policy may thus be properly reduced by the amounts which the insurer has paid to the mortgagee to satisfy the mortgage indebtedness.

*Edward M. Miller, P.C.* (by *Edward M. Miller),* for plaintiff.

*Dickinson, Mourad, Brandt, Hanlon & Becker* (by *William V. Taylor),* and *Gromek, Bendure & Thomas* (by *Nancy L. Bosh* and *Daniel J. Wright),* of counsel, for defendant.

Before: R. M. MAHER, P.J., and D. E. HOLBROOK, JR., and S. J. LATREILLE,* JJ.

PER CURIAM. This is a fire insurance recovery case in which a jury returned a verdict of $87,333 in favor of plaintiff. The trial judge reduced that amount by the unpaid mortgage balance paid out pursuant to the contract by defendant insurer. Both parties appeal as of right and we affirm.

Plaintiff's house was destroyed by fire on March 11, 1981. Plaintiff testified that he left home with his girlfriend, Jacqueline Moore, and her son, Nathan, at about 10:30 p.m. The house was locked.

* Circuit judge, sitting on the Court of Appeals by assignment.

He took Ms. Moore to work, dropped off Nathan at his grandmother's house, stopped briefly at a bar, had a snack at his mother's house and visited another woman, Mattie Hardaway, with whom he spent the night. Both Moore and Hardaway corroborated plaintiff's story.

Plaintiff purchased his house in 1978 and insured it with defendant. While plaintiff was incarcerated in prison, the insurance policy lapsed. When the policy was renewed, the coverage was increased with a broader type of policy. Defendant emphasizes that plaintiff purchased a replacement-value policy, the most expensive type, less than one month prior to the fire.

Plaintiff recounted a history of disagreement with Robert Mason, a former criminal confederate, concerning the house. The theory developed at trial was that Mason, rather than plaintiff, set the fire if arson was its cause. Mason had threatened plaintiff during their dispute and had a key to the house at the time of the fire.

Defendant called Lieutenant William Peck of the Detroit Police Arson Squad as an expert witness. He opined that, although the exact cause of the fire could not be determined, arson was suspected. The fire burned right into the floor rather than in the fan pattern that most accidential fires exhibit. The absence of possible accidental sources and sparse household furnishings were other factors which were present here which are also common to arson fires. Likewise, Lieutenant Peck noted that everyday living utensils were not found in the house.

Defendant's claims adjuster, John Winnicker, testified that Gibson claimed his Fifth Amendment privilege when asked about his financial status at the time of the loss, and at trial plaintiff admitted having done so. Plaintiff also admitted having said

that he was employed by Cooper Ferguson. Ferguson denied that plaintiff ever worked for him in any capacity. Gibson did ultimately disclose to Winnicker that some of his income was "gained on the streets", and he told him of his prior criminal record.

Defendant insurer contends that plaintiff refused to submit to a full and complete examination as to all material facts as required by the contract since he asserted his Fifth Amendment privilege against self-incrimination during the investigation. Defendant complains that its motions for summary judgment and directed verdict should have been granted on this basis.

Although cases from foreign jurisdictions allow for the defeat of an insurance claim by any refusal to answer relevant questions during an investigation, the Michigan cases regarding forfeiture of contract rights are fairly summarized by the following commentary:

"Michigan follows the substantial performance of contract rule. The common-law rule was that performance as a condition precedent to recovery on a contract must be strict performance in accordance with the terms of the contract.

*   *   *

"A contract is substantially performed when all the essentials necessary to the full accomplishment of the purposes for which the thing contracted has been performed with such approximation that a party obtains substantially what is called for by the contract.

"Generally speaking, deviations from the absolute terms of a contract do not necessarily cause a failure of performance, but may entitle a party to extra compensation or damages. Imperfections in the matters of details which do not constitute a deviation from the general plan do not prevent the performance from being regarded as substantial performance. On the other hand, where the deviations or alterations are

such as would essentially change the terms of performance, they will be considered as a failure of performance." 6A Michigan Law & Practice, Contracts, § 314, pp 315-316 (footnotes omitted).

Plaintiff emphasizes that he answered similar questions regarding his financial status both before and after the refusal to answer which is claimed here as a breach. Even though the lack of specificity with regard to plaintiff's assets reduces the insurer's ability to investigate the incident, plaintiff made no attempt to conceal the general source of money at his disposal. Under the circumstances set forth in this case, plaintiff substantially performed his obligation to cooperate with the investigation, and, therefore, under Michigan law, he did not forfeit his contractual rights. See, generally, Anno: *Liability Insurance: Misstatement by Insured, Later Withdrawn or Corrected, as Breach of Co-Operation Clause,* 13 ALR4th 837. *Cf. Gordon v St Paul Fire & Marine Ins Co,* 197 Mich 226; 163 NW 956 (1917), which involved a situation very much like the one at bar. There the insurer alleged breach by the insured due to her refusal to submit to an examination without her attorney present. Plaintiff, however, later expressed her availability for questioning and testified fully at trial; thus, her initial recalcitrant attitude was deemed insubstantial. In addition, authority exists for the proposition that insurance contracts are not void due to misrepresentations or false statements where the insurer was not prejudiced. See *e.g., Bernadich v Bernadich,* 287 Mich 137, 143; 283 NW 5 (1938). These too were factual questions for the jury which were resolved contrary to defendant's position at trial. This Court perceives no error.

Defendant next contends that the trial court's

exclusion of its expert witness's testimony on valuation was error. The court below explained that the expert's examination of the premises 1-1/2 years after the fire, when extensive removal of items from the house had already taken place, would render his evaluation incomplete.

Under MRE 403 the court has discretion to exclude relevant evidence where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. To admit such testimony here, essentially a partial estimate of the liability at issue, would be to put figures before the jury which would represent far less than a fair compilation of the entire replacement cost and easily cause unwarranted confusion. Therefore, the trial court properly excluded this valuation testimony.

Defendant also argues that it was error to allow plaintiff to testify about the threats made against him by Robert Mason. However, since testimony concerning threats of violence by Mason against Gibson was relevant to the issues in dispute, it was not error to admit such evidence. It was merely admitted to prove that the statements were made, rather than to prove the truth of the matter asserted. Accordingly, the statements were not hearsay. MRE 801(c). Likewise, evidence to the effect that Mason was familiar with the techniques employed by arsonists and had some ability to execute the threats in the manner alleged was relevant to plaintiff's case and was properly admitted. MRE 401.

Defendant's assignments of instructional error are also without merit. While the practice of identifying the party requesting an instruction has been criticized, *Reetz v Rigg,* 367 Mich 35, 39-41; 116 NW2d 323 (1962); *Hayes v Coleman,* 338 Mich 371, 377-378; 61 NW2d 634 (1953), we will not set

aside the jury's verdict where no objection was raised at trial.

The trial court did not err by separating out the defense's case relating to fraud. See *Rayis v The Shelby Mutual Ins Co of Shelby Ohio,* 80 Mich App 387, 391-392; 264 NW2d 5 (1978). Likewise, the intent to defraud was not an issue at trial because plaintiff denied any personal connection with the fire.

On defendant's final claim of error, that the trial court's instructions unduly emphasized the credibility of plaintiff's witnesses as compared to defendant's, we find no merit. When read as a whole, the instructions, in context, do not constitute reversible error.

Plaintiff cross-appeals from the trial court's reduction of the jury award by the amount of the unpaid mortgage balance. In *Better Valu Homes, Inc v Preferred Mutual Ins Co,* 60 Mich App 315, 319; 230 NW2d 412 (1975), this Court explained that although only one insurance commitment is present in a policy against fire loss, there are two separate contracts governing the payment of the proceeds. The standard mortgage-loss-payable clause essentially accords priority to insuring the mortgage debt, making both plaintiff herein and his mortgage company real parties in interest under the insurance policy. Here, defendant's payment of the existing mortgage indebtedness satisfied one of its distinct obligations under the contract, while having no effect upon plaintiff's claim. While *Better Valu* suggests that the mortgage company might also have been a party to this lawsuit, it just as clearly forecloses plaintiff's argument that he has some interest in the unpaid mortgage balance. See also *Cole v Michigan Mutual Ins Co,* 116 Mich App 51, 55; 321 NW2d 839

(1982). Since plaintiff had no legal interest in this portion of the award, the trial court properly reduced the judgment by this amount.

Affirmed.