812 F.2d 1406
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Dr. Arthur HEROLD, P.C., d/b/a Stahelin-Schoolcraft Clinic,
P.C., Plaintiff-Appellee,
v.
CENTRAL MUTUAL INSURANCE COMPANY, a mutual company,
Defendant-Appellant.
 No. 85-2011.
 United States Court of Appeals, Sixth Circuit.
 Jan. 19, 1987.
 
 Before JONES, Circuit Judge, and CELEBREZZE and PECK, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Dr. Arthur Herold, plaintiff, operated a clinic in Detroit, Michigan. The building occupied by the clinic and the building's contents were insured by the defendant, Central Mutual Insurance Company. On November 15, 1982, a fire destroyed the clinic. Plaintiff asserted a claim under the defendant's policy for loss and damage to the building and its contents. Defendant denied that claim, asserting that Dr. Herold had set the fire himself. Defendant also asserted that plaintiff's claim was fraudulently overstated and that plaintiff had voided his policy by concealing information from the defendant.
 
 
 2
 The trial court granted plaintiff's motion for a directed verdict on the fraudulent overstatement and concealment of material fact affirmative defenses. The jury rejected the defendant's affirmative defense of arson. Plaintiff was accordingly awarded $86,700.00 for the building and $117,590.31 for the contents of the building. The district court denied defendant's motion for judgment non obstante veredicto or, in the alternative, for a new trial or, in the alternative, for remittitur. Defendant now appeals both the judgment and the denial of its final motion. Upon review, we affirm the district court.
 
 
 3
 Defendant first alleges that the trial court unreasonably restricted the testimony of defendant's arson expert. The trial court has broad discretion to determine whether expert testimony should be admitted, and that court's decision will not be overturned on appeal unless it is clearly erroneous. In this case, the court ruled outside the presence of the jury that the defendant's proffered "expert" on the causes and origins of fires could not testify to anything which required a knowledge of physics or chemistry. The court limited the scope of the "expert's" testimony in this way because the witness had never taken any courses in chemistry or physics. The court therefore believed that the witness could not testify as to exactly what caused the fire, i.e., whether alcohol or electricity started the fire. Defendant contends that the witness' informal training and experience qualified him to testify concerning what exactly caused the fire. However, the district court pointed out that there was no indication that the witness' years of experience had led him to arrive at correct conclusions since he had never been tested. Accordingly, the district court did not abuse its discretion in prohibiting the "expert" from testifying that the fire was intentionally set and that a liquid was used as an accelerant.
 
 
 4
 Defendant next argues that the trial court improperly interrogated defense witnesses. Federal Rule of Evidence 614(b) provides that the court may interrogate witnesses. Rule 614(c) provides that objections to such interrogation "may be made at the time or at the next available opportunity when the jury is not present." Even when an objection is made, a reviewing court may reverse only for abuse of discretion. Fed.R.Evid. 614 advisory committee's note. In the case before us, defendant admits that no objection was ever made, but contends that we should nevertheless reverse the district court because objection would have been futile and no curative instruction could have remedied the prejudice. The record does not indicate to us that the district court would have ignored worthy objections. Furthermore, we believe that the district court's questioning of defendant's witnesses was not hostile, generated important information, and fell within the wide discretion of the trial court.
 
 
 5
 Defendant also asserts that the trial court erred in granting plaintiff directed verdicts with respect to defendant's fraud and false swearing claim and concealment of material fact claim. We agree with the district court that the record lacks any evidence for these claims.
 
 
 6
 Under Michigan law, fraud or false swearing in this context is sometimes referred to as fraudulent proof of loss. See Rayis v. The Shelby Mut. Ins. Co., 80 Mich.App. 387, 264 N.W.2d 5 (1978). The elements of proof are: (1) that the misrepresentation was material; (2) that it was false; (3) that the insured knew that it was false at the time he made the representation or that it was made recklessly, without any knowledge of its truth; and (4) that the insured made the material misrepresentation with the intention that the insured would act upon it. Id. at 393 (citing West v. Farm Bureau Ins. Co., 63 Mich.App. 279, 282; 234 N.W.2d 485 (1975)). In order to support its fraud and false swearing claim, defendant only pointed to the difference between its adjuster's figures and plaintiff's adjuster's figures--$136,508.41 compared to $240,348.49. However, as defendant notes, plaintiff's adjuster determined the replacement cost of the building and its contents, while defendant's adjuster determined the actual cash value. Plaintiff and his adjuster never represented that their estimates were of the actual cash value. Instead, it seems that they assumed that their estimates of replacement costs would be adjusted for depreciation by the insurance company. When both parties' figures are adjusted to reflect estimates either of actual cash value or of replacement cost, no great disparity exists. Therefore, the trial court correctly held that there was no jury issue concerning plaintiff's intent to defraud the insurance company through false estimates of his loss.
 
 
 7
 The Michigan Standard Fire Insurance Policy provides that a policy is void if, before or after the loss, the insured willfully conceals or misrepresents any material fact or circumstance concerning the insurance in any way. During plaintiff's examination by the insurance company in what is called an "Examination under Oath," plaintiff testified that he had been attempting to obtain a $60,000 to $70,000 loan from personal sources. This loan was to be secured by a mortgage and was going to be used to pay off taxes and to replace and remodel some equipment. However, when asked from whom he had sought the loan, plaintiff stated that he preferred not to reveal the source since he felt the source was not "pertinent." Later, after the insurance company had officially denied his claim, plaintiff did reveal the personal sources from whom he had sought loans.
 
 
 8
 Defendant asserted that plaintiff's refusal to answer that single question during his examination justified its refusal of his claim. The district court found that defendant had already decided before the examination to deny plaintiff's claim, and so the failure to give the information could not have been the "cause" for the claim's denial. Moreover, the court held that the sources of the loans were immaterial to the insurance claim. This conclusion is supported by Michigan law. In Gibson v. Group Ins. Co., 142 Mich.App. 271, 369 N.W.2d 484 (1985), the claimant's home had been destroyed by fire. The claimant refused to give information about his financial status and lied about his employment. Eventually, it was revealed that the claimant worked "on the streets." When the insurance company claimed that this erroneous information voided the policy, the court held:
 
 
 9
 Even though the lack of specificity with regard to plaintiff's assets reduces the insurer's ability to investigate the incident, plaintiff made no attempt to conceal the general source of money at his disposal. Under the circumstances set forth in this case, plaintiff substantially performed his obligation to cooperate with the investigation, and, therefore, under Michigan law, he did not forfeit his contractual rights.
 
 
 10
 Id. at 276. We believe that this Michigan decision governs the case at hand, where plaintiff told the company how much he had attempted to borrow and from what general source he sought the money.
 
 
 11
 Defendant's final contention is that since its adjuster was the only witness who gave figures representing the actual cash value of plaintiff's loss, the jury could not award an amount higher than his testimony indicated. Plaintiff's policy entitled him to receive only the actual cash value of his loss until he replaced the lost property. The actual cash value of property is calculated by determining the replacement cost and depreciating by a certain percentage. The difference between the actual cash value and the actual replacement cost is paid to the claimant only at the time he replaces the property. At the time of trial, plaintiff had not yet replaced the property, and so he was then entitled only to actual cash value.
 
 
 12
 At trial, it is true that only defendant's expert gave final figures on actual cash value. However, both he and plaintiff's adjuster also gave replacement cost figures and a variety of depreciation rates. Thus, the jury would not have to "speculate" to arrive at actual cash value estimates that differed from those given by defendant's adjuster. Using the highest replacement cost estimate and the lowest depreciation rate testified to at trial, the jury could have arrived at an even higher figure than it did. Therefore, the jury's verdict was not so excessive as "to be 'shocking' or to manifest plain injustice." Rodgers v. Fisher Body Div., G.M.C., 739 F.2d 1102, 1106 (6th Cir.1984).
 
 
 13
 Accordingly, we affirm the judgment and the order of the district court.