NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0694n.06

No. 13-2587

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Sep 05, 2014
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| MONIQUE SINKFIELD,<br><br>     Plaintiff-Appellant,<br><br>v.<br><br>STATE FARM INSURANCE,<br><br>     Defendant-Appellee. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |

BEFORE: BOGGS, CLAY, and GILMAN, Circuit Judges.

**CLAY, Circuit Judge.** Plaintiff Monique Sinkfield appeals from the district court's grant of summary judgment in favor of Defendant State Farm Insurance (whose actual name is State Farm Fire and Casualty Company) on Plaintiff's claim of breach of a contract of insurance. For the reasons set forth below, we **AFFIRM** the district court's judgment.

BACKGROUND

In approximately November 2010, Plaintiff purchased a home on Mark Twain Street in Detroit, Michigan. The purchase price was $50,000, which Plaintiff financed with a 15-year mortgage from Black Diamond Mortgage Corporation. Plaintiff paid Black Diamond $800 per month, a figure that included taxes and insurance on the home. But since Black Diamond would not pay for home insurance after January 2011, Plaintiff applied for over $200,000 worth of insurance from Defendant in December 2010. Defendant wrote the policy.

On December 30, 2010, Plaintiff filed a voluntary petition for Chapter 7 bankruptcy. In her original petition, Plaintiff valued her liabilities at just over $82,000 and her assets at $4,000. These assets were few—a $500 desktop computer, $500 worth of jewelry, and $3000 worth of clothing. Plaintiff initially claimed her home was worth nothing, but in February 2011, she amended her petition to state its value at $27,000. Plaintiff also listed her monthly income as $1600, which translated into take-home pay of $1325 per month. But since Plaintiff's monthly obligations totaled $1380, she was actually working herself deeper into debt. Plaintiff was discharged from bankruptcy on April 18, 2011. Her creditors received nothing.

Less than fourteen months later—in the small hours of June 11, 2012—Plaintiff's house caught fire. Plaintiff claimed that the fire caused $143,000 worth of damage to the house. At first, she claimed that the fire also caused $123,477.95 of damage to her personal property. The basis of this claim was an itemized list of damaged property that Plaintiff submitted to Defendant. However, Plaintiff has since admitted that the list of destroyed property was prepared by her adjuster, and that Plaintiff herself did not assist the adjuster in making the list or valuing the property. She now asserts that the fire destroyed $170,000 worth of personal property. Summed up, Plaintiff claims that the fire caused $313,000 worth of damage.

Plaintiff has difficulty explaining the disparity between the value of her assets when she emerged from bankruptcy and the amount she now wants Defendant to pay. She gives no explanation at all for the dramatic increase in the value of her home. As for her personal property, Plaintiff asserts that she received $7000 worth of gifts in the fourteen months after her bankruptcy. Plaintiff claims that she purchased the remainder between April 2011 and June 2012. Plaintiff did not have much disposable income during that time. According to her tax returns, Plaintiff made only $16,975 in 2010 and $11,678 in 2011. Plaintiff estimated that at the

time of the fire, she made between $550 and $1000 per month working for the National Health Foundation. Plaintiff also claims that at the time of the fire, she received a total of about $2500 per month in child support, unemployment benefits, and Social Security Insurance benefits. In addition, Plaintiff asserted that she made approximately $1000 per month for promoting a local strip club, and approximately $3500 every time she threw a party for a social club she helmed. As Plaintiff candidly admitted at her deposition, "I make three times as [much as] what I report to the I.R.S." (R. 17-4, Sinkfield Dep., at 204.)

Defendant denied Plaintiff's claim in December 2012. Among other reasons, Defendant asserted that Plaintiff violated the policy's fraud clause, which reads:

> Concealment or Fraud. This policy is void as to you and any other Insured, if you or any other Insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

(R. 17-3, Policy, at 172.) Shortly after Defendant denied Plaintiff's claim, Plaintiff sued for breach of contract in Michigan state court. Defendant removed on the basis of diversity jurisdiction and, after discovery, moved for summary judgment. The district court granted Defendant's motion on the basis of judicial estoppel. *Sinkfield v. State Farm Ins., Inc.*, No. 13-10418, 2013 WL 5954540 (E.D. Mich. Nov. 7, 2013). This appeal timely followed.

## DISCUSSION

### I. JUDICIAL ESTOPPEL

The district court disposed of Plaintiff's claim entirely on the basis of judicial estoppel—concluding that the value of Plaintiff's property in June 2012 compared to its value in April 2011 simply could not be believed. We review the application of judicial estoppel *de novo*. *See Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008). "The doctrine of judicial estoppel applies to a party who has successfully and unequivocally

asserted a position in a prior proceeding; he is estopped from asserting an inconsistent position in a subsequent proceeding." *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982). The purpose of judicial estoppel is "to protect the integrity of the judicial process," and "prevent improper use of judicial machinery." *New Hampshire v. Maine*, 532 U.S. 742, 749, 750 (2001) (internal quotation marks omitted). Courts consider several factors when determining whether to apply judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750–51 (internal quotation marks and citations omitted). These factors are neither exclusive nor inflexible. *See id.* at 751. "Moreover, the doctrine of judicial estoppel is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Lorillard*, 546 F.3d at 757 (internal quotation marks omitted).

Judicial estoppel usually applies to particular arguments that parties advance. For example, in *New Hampshire*, that state was estopped from arguing that the boundary between it and Maine ran along the shoreline of a river, when it had argued several years before that the boundary ran down the middle of the river's navigable channel. *See New Hampshire*, 532 U.S. at 751. But under certain circumstances, we have held that judicial estoppel can apply to bar entire claims. Thus, if a party fails to disclose the existence of a claim in a bankruptcy proceeding, that party might be estopped from prosecuting that claim after the bankruptcy has come to a close. *See White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 478–79 (6th Cir. 2010).

Plaintiff's claim cannot be estopped in its entirety for the simple reason that it did not exist at the time that she was in bankruptcy. This case thus differs from other bankruptcy-related estoppel cases where the separate proceeding could be dismissed as a matter of law. *See id.* at 478–79. Nor can we say that judicial estoppel necessarily applies to Plaintiff's version of the facts. Plaintiff does not dispute the value of her property at the close of her bankruptcy. It is Plaintiff's own contention that she acquired approximately $166,000 of personal property between April 2011 and June 2012, and that her house appreciated in value by more than $100,000 over the same period. Plaintiff's version of the case strains credulity, but it does not seem to be "clearly inconsistent with" the position she took in her bankruptcy proceeding. *New Hampshire*, 532 U.S. at 750.

Although we doubt that judicial estoppel should apply in this case, this legal quibble has no practical effect. Call it judicial estoppel or simply Plaintiff's sworn testimony—either way, Plaintiff has locked herself into the position that the value of her real and personal property was approximately $31,000 in April 2011, and over $300,000 just fourteen months later. The next question is whether this dramatic increase of fortunes establishes a violation of the policy's fraud clause.

## II.    THE FRAUD CLAUSE

The district court did not address the merits of the parties' contractual dispute. But "as long as the parties were given a full and fair opportunity to address" this issue, we may reach it on appeal. *Smith v. Jefferson County Bd. of Sch. Comm'rs*, 641 F.3d 197, 205 (6th Cir. 2011). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We "must view all the facts and the inferences drawn therefrom in the light most favorable to the

nonmoving party." *Birch v. Cuyahoga County Probate Ct.,* 392 F.3d 151, 157 (6th Cir. 2004).

Under this standard, Defendant was entitled to summary judgment.

The fraud clause in Plaintiff's policy is simply a version of the fraud clause found in Michigan's now-repealed statutory fire insurance form. *See* Mich. Comp. Laws § 500.2832 (1989 ed.); *see also* Mich. Comp. Laws § 500.2833(1)(c). This standard clause allows an insurer to raise a fraud defense (also called "false swearing") to an insured's claim for breach of contract. As Michigan courts have construed this defense:

> To void a policy because the insured has wilfully misrepresented a material fact it must be shown that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time he made the representation or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it.

*Rayis v. Shelby Mut. Ins. Co. of Shelby, Ohio*, 264 N.W.2d 5, 8 (Mich. Ct. App. 1978) (internal quotation marks omitted). The insurer must prove these elements by a preponderance of the evidence. *See Stein v. Home-Owners Ins. Co.*, 843 N.W.2d 780, 784 (Mich. Ct. App. 2013).

As a general matter, "[w]hether misrepresentations or false statements void an insurance policy depends upon the intent to defraud and this is a question of fact for the jury." *West v. Farm Bureau Mut. Ins. Co. of Mich.*, 259 N.W.2d 556, 557 (Mich. 1977) (per curiam) (quotation marks omitted). When the alleged misrepresentation comes down to a disparity between the true value of the damaged property and the value claimed by the insured, Michigan courts will submit these cases to a jury so long as the claimant has a "plausible non-fraudulent explanation" for the disparity—even if the disparity is rather large. *Id.* at 558. However, we can rule on this defense as a matter of law if the difference between the actual value of the property and the claimed value of the property is "extreme." *Rayis*, 264 N.W.2d at 7 n.3; *accord J.C. Wyckoff & Assocs. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1486 (6th Cir. 1991).

This case falls into the narrow category of matters where we can rule on the fraud defense as a matter of law. According to Plaintiff, her home appreciated in value from $27,000 to at least $143,000 over the space of just fourteen months. Plaintiff has provided no explanation for this dramatic change of fortunes. Also, according to Plaintiff, she acquired about $159,000 worth of personal property between April 2011 and June 2012. (This figure represents the $170,000 she wants Defendant to pay, minus the $7000 of gifts she allegedly received, and minus the $4000 worth of personal property she declared in bankruptcy.) Even if we accept Plaintiff's statement that she makes three times more than what she discloses to the IRS, and then further assume that Plaintiff plowed every cent of her earnings into buying furniture, clothing, jewelry, and the like, Plaintiff still cannot explain where she got more than $100,000 worth of personal property.

In short, the dollar disparities in this case are too extreme for a rational jury to find for Plaintiff. There are no reasonable inferences that could explain the dramatic increase in the value of Plaintiff's real and personal property other than the one Defendant suggests—that Plaintiff's valuation of her property was false. Because Plaintiff knew it was false, because it was material, and because Plaintiff made this representation with the intent to defraud Defendant, Defendant was entitled to summary judgment on the basis of the policy's fraud clause.

## CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.