CAMDEN FIRE INSURANCE COMPANY *v.* KAMINSKI.

1. AUTOMOBILES—INTERSECTIONS—THROUGH STREET—1-WAY STREET.
Northbound defendant motorist on 2-way through street whose car collided with eastbound car on 1-way street for westbound traffic with fire damage resulting to corner building owned by plaintiff's insured was entitled to have his theory of the case presented to jury pursuant to supporting proofs and requests to charge that he was entitled to assume that no vehicles would be proceeding the wrong way on the intersecting street until he saw, or, by the exercise of reasonable care, should have seen, to the contrary, and the failure so to charge was reversible error.

2. TRIAL—INSTRUCTIONS—THEORY OF CASE—EVIDENCE—REQUEST TO CHARGE.
Each party to an action is entitled to have the jury instructed with reference to his theory of the case, where such theory is supported by competent evidence and the instruction is properly requested, and this although such theory may be controverted by evidence of the opposing party.

Appeal from Wayne; Brennan (John V.), J. Submitted April 10, 1958. (Docket No. 45, Calendar No. 47,214.) Decided June 11, 1958.

Case by Camden Fire Insurance Company, a New Jersey corporation, subrogee, against Edward Kaminski, Jr., Joe Warchol and Rita Warchol for property damage to store building resulting from collision between the defendants' automobiles. Verdict and judgment for plaintiff against all defendants.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5A Am Jur, Automobiles and Highway Traffic § 1095.
[2] 53 Am Jur, Trial § 626.

Defendant Kaminski appeals. Reversed and remanded.

*Stanley H. Maples (John E. Marlin* and *William J. Weber,* of counsel), for plaintiff.

*Erickson, Dyll, Marentay, Van Alsburg & Slocum (Eugene V. Douvan,* of counsel), for defendant Kaminski.

Voelker, J.  The facts in this case suggest once again the boundless ingenuity and infinite resource of our native motorists for getting themselves in trouble.  This suit grows out of a rather weird intersection collision between the defendants' 2 cars following which the Warchol car proceeded out of control into the front door of the corner building of plaintiff's assured, setting it on fire.  The plaintiff fire insurance company paid the loss and sued both sets of driver-owners in the Detroit common pleas court and got a joint judgment against both.  Defendant Kaminski sought a new trial for failure of the trial judge to give certain requested instructions and for error in the instructions he did give.  His motion was denied and he appealed to circuit court, where he again lost, and he now appeals here.  After judgment the Warchols evidently folded their hands and did nothing.

Here is our bizarre factual situation: Yemans and Lumpkin are 2 intersecting streets in Hamtramck. Yemans is a 1-way street going from east to west; Lumpkin is a wider 2-way "through" street going north and south.  All traffic going west on 1-way Yemans must stop before entering or crossing 2-way Lumpkin.  Defendant Kaminski was driving north on Lumpkin.  Defendant Rita Warchol was driving *east* (that is, the wrong way) on Yemans. The Warchol car was crossing Lumpkin when Ka-

minski's car struck the Warchol car. As noted, the Warchol car then mysteriously managed to proceed southeasterly into the corner building of plaintiff's assured, setting it on fire. Both drivers were familiar with the intersection.

At the trial, as might be expected, each set of defendants sought to blame the other. It was the theory and testimony of the Warchols that however negligent Mrs. Warchol was in driving the wrong way on a 1-way street, she was a "sitting duck" when the accident happened and that Kaminski had a duty to observe her and avoid the accident, and that therefore Kaminski's negligence and not hers was the proximate cause of the accident and the consequent fire loss. Kaminski's theory and testimony was that he had a right to assume that no vehicle would be proceeding the wrong way on Yemans, and that he had a right to rely upon this assumption unless and until he saw or by the exercise of reasonable care should have seen to the contrary, which he claimed he had no chance to do. The respective testimony of the defendants was sharply conflicting on the question of relative speeds, position of the cars, and relative closeness to the intersection just prior to the collision.

In his long and discursive charge to the jury the learned trial judge instructed the jury on quite a number of things, including a number of Warchol-inclined instructions, including the following:

"I am asked to charge you and do charge you:

" 'The statute giving the right-of-way to cars on trunk-line highways does not authorize one to assume that in all events he may proceed without looking ——'

"He must look to see what is plainly and apparently before his vision as he goes down the street, as he looks ahead.

" '——— or if unable to see, without exercising precaution commensurate with reasonable prudence.' "

The court seemed excessively beguiled by the idea that the "wrong-way" Warchol car might have had little or nothing to do with the accident. We give typical quotations:

"Counsel for the defendants, Warchol, has properly challenged your attention to the question of whether or not the direction of operation of the Warchol car had anything to do with this accident."

. Then again:

"If you feel—and I am going to repeat this so there can't be any question at any time in the future—if you determine from your judgment of the case that the direction of Mrs. Warchol's car had anything to do with this accident then you must necessarily find that since she was going the wrong way on the street that she was guilty of contributory negligence. That depends first on whether you find that that direction which she was going had anything to do with the accident in this case.

"I am asked to charge you that and I do so charge you. But I do not charge you as a matter of law that it had.

"I charge you that you are to determine first, whether the direction had anything to do with the accident."

Then again, near the end, after apprehensive appellant's counsel had finally reminded His Honor that he had earlier submitted certain requests:

"Yes, I have your proposed instructions and have given the substance of your proposed instructions, which is: If driving upon a 1-way street, if that is the cause or proximate cause of this accident—I have already given it to them so they'll understand that, I think, very thoroughly."

Among certain of appellant's requested instructions was the following:

"I further charge you that Edward Kaminski in approaching the intersection of Lumpkin and Yemans had a right to assume that no vehicles would be proceeding in an easterly direction out of Yemans, and had a right to rely upon such assumption until he saw, or, by the exercise of reasonable care, should have seen to the contrary."

The precise situation here presented seems never to have been faced by our Court. If our domestic motorists have been laggard, more imaginative motorists elsewhere have beaten us to the punch.

In support of his request appellant cited *Mathias* v. *Eichelberger* and *McLean* v. *Eichelberger,* 182 Wash 185 (45 P2d 619). See 27 NCCA NS 635. The case appears to support the request made.

We also quote the following from *Daly* v. *Employers Liability Assurance Corporation, Ltd.* (La App), 15 So2d 396, 399, cited by appellant, where the Louisiana court spoke as follows:

"A prudent driver, upon approaching a street which he knows to be a 1-way street, looks for traffic in the direction in which it is supposed to travel and he cannot, by any rule of law or reason, be expected to anticipate that anyone is going to violate the law by proceeding into the intersection from the wrong way."

On the question of the right of a party litigant to have an instruction given on his theory of the case, 53 Am Jur, Trial, § 626, p 487, has this to say:

"Each party to an action is entitled to have the jury instructed with reference to his theory of the case, where such theory is supported by competent evidence and the instruction is properly requested, and this although such theory may be controverted by evidence of the opposing party."

Mr. Justice Edwards quoted the foregoing and put the matter both charitably and succinctly in his opinion in *Schattilly* v. *Yonker*, 347 Mich 660, 666 where he wrote:

"No doubt the omission was inadvertent, but at no point in this lengthy charge is plaintiff's basic theory ever referred to. We believe it was reversible error for the trial court to ignore plaintiff's requests to charge."

The circuit judge on appeal conceded that the quoted requested instruction asked for below should probably have been given but thought it was not error in view of the rest of the charge. We cannot agree. We think the defendant Kaminski was entitled to a clear and unambiguous charge covering substantially his theory of the case as supported by the testimonial picture created by him. He did not get it or anything like it. The case therefore went to the jury without proper instructions. While we are reluctant to further burden this plaintiff, we must therefore somewhat reluctantly reverse and remand the case for a new trial as to all parties, with costs to appellant.

Smith, Black, Edwards, and Kavanagh, JJ., concurred with Voelker, J.

Dethmers, C. J., and Carr and Kelly, JJ., concurred in the result.