**D.R.C.D.T., INC., a Michigan corporation, Dominic Tassoni; Rosemarie Tassoni, d/b/a Dominic's Tower Bowl, Michigan Residents, Plaintiffs-Counter-Defendants-Appellees,**

**v.**

**INTEGRITY INSURANCE COMPANY, a foreign insurance corporation, Defendant-Counter-Plaintiff-Appellant.**

No. 85-1778.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 25, 1986.

Decided April 21, 1987.

Phillip K. Yeager, Denenberg, Tuffley, Bocan, Janieson, Black, Hopkins & Ewald, Southfield, Mich., Susan Tukel (Lead Counsel), Charles R. Tuffley, argued, for defendant-counter-plaintiff-appellant.

Thomas M. Clemons, argued, Algonac, Mich., for plaintiffs-counter-defendants-appellees.

Before JONES, MILBURN and BOGGS, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

The defendant in this insurance contract case, Integrity Insurance Company ("Integrity"), appeals from the district court's order granting the plaintiffs' motion for a new trial. The defendant also appeals from the judgment entered on the jury's verdict following the second trial. For the reasons set forth below, we affirm in part and reverse and remand in part.

The plaintiffs in this action are D.R.C.D.T., Inc., a closely held corporation, and Dominic and Rose Tassoni, the corpora-

tion's sole shareholders. The corporation was formed for the purpose of purchasing Dominic's Tower Bowl, a bowling alley and lounge located in Marine City, Michigan. The bowling alley was purchased in 1976 for $300,000 from Bruno Tassoni, Dominic's father. Two hundred thousand dollars of the purchase price was allocated to the building; the remaining $100,000 was allocated to fixtures, equipment and inventory. The purchase contract entered into by the plaintiffs called for monthly installment payments and interest payments of 6% per annum. The monthly payments were made to Bruno Tassoni, who retained the title to the property.

Dominic's Tower Bowl was insured against fire by Integrity. Coverage included $325,000 for the building and its contents and $28,000 for business interruption. The titleholder was named as an additional insured under the policy. On January 25, 1982, a fire completely destroyed the bowling alley. Following the fire, the plaintiffs contracted with Associated Adjusters, Inc., a public adjusting firm, to assist in the preparation and submission of a formal claim to Integrity. Shortly after the fire, but before the plaintiffs formally submitted their claim, Integrity gave the plaintiffs a $20,000 advance on their claim.

The plaintiffs' claim was prepared by Earl Shipper, president of Associated Adjusters. On the Sworn Statement in Proof of Loss submitted by the plaintiffs with their claim, the plaintiffs stated that the actual value of the property at the time of the fire was $662,221.93. The total amount claimed by the plaintiffs under the policy for property loss, however, was $325,000, the policy limit.[1] The plaintiffs also submitted a $28,000 claim for business interruption.

Following an investigation, Integrity denied the plaintiffs' claim, alleging arson, fraud and false swearing. In July 1982, the plaintiffs commenced this action, seeking to recover under the fire insurance policy. Integrity raised two affirmative de-

fenses: 1) that the fire had been intentionally set by the plaintiffs, and 2) that the plaintiffs had committed fraud and false swearing in their claim. Integrity also filed a counterclaim seeking to recover the $20,000 advance given to the plaintiffs.

On November 23, 1983, prior to trial, Integrity entered into a settlement agreement with Bruno Tassoni, the titleholder. Integrity paid Tassoni $229,368.95, and in return Tassoni released Integrity from liability for any and all claims, debts, dues, actions, causes of action and demands whatsoever.

The case went to trial in June 1984. The trial centered largely around Integrity's affirmative defenses. Integrity produced evidence that Dominic's Tower Bowl was listed for sale at the time of the fire with two realtors. The listed price with one realtor was $300,000; the listed price with the other realtor was $350,000. Integrity also produced evidence that the plaintiffs had entered into a purchase agreement with an interested buyer to sell the building and its contents for $325,000. This agreement was cancelled four days prior to the fire. Integrity produced further evidence that during the time that the plaintiffs had operated the bowling alley, the business had suffered from overdue taxes, sales losses, debts to employees, overdue mortgage payments, debts to suppliers, and debts to relatives of Dominic Tassoni. Finally, Integrity asserted that the plaintiffs had claimed $28,000 for loss of earnings despite the fact that their business was operating at a loss.

On July 25, 1984, the jury returned a verdict finding that although the plaintiffs had not set or procured the setting of the fire, they had committed fraud and false swearing concerning the value of the insured property and the amount of damages claimed. On July 27, 1984, the district court entered its judgment on the verdict, ordering that the plaintiffs take nothing on their claim and that Integrity recover $20,-

---

1. In its appellate brief, Integrity contends that the plaintiffs submitted a claim of $662,221.93 for the building and its contents. This is incorrect, and Integrity so concedes in its reply brief.

The plaintiffs claimed that the actual value of the property at the time of the loss was $662,-221.93. Their claim under the policy was, however, for only $325,000.

000 from the plaintiffs on its counterclaim for the return of the advance payment made in 1982. The plaintiffs then moved for a judgment notwithstanding the verdict and for a partial new trial pursuant to Federal Rule of Civil Procedure 50(b) or, alternatively, for a new trial pursuant to Rule 59. The district judge denied the plaintiffs' motion for a JNOV. The judge, however, set aside the jury's verdict on the fraud and false swearing issue and granted a partial new trial on that issue. The district court's decision to grant a partial new trial was based on its opinion that the jury's verdict as to the fraud and false swearing issue was against the clear weight of the evidence. The court noted that the evidence was not sufficient to prove that the plaintiffs' claim was made in bad faith or with fraudulent intent. The court relied largely on the fact that the plaintiffs' claim was based upon the evaluation of a licensed public adjusting firm.

The second trial on the sole issue of fraud was held in the summer of 1985. Following this trial, the jury returned a verdict in favor of the plaintiffs in the amount of $297,405.00. The judge then entered judgment in favor of the plaintiffs and ordered that 12% interest be paid to plaintiffs from the date their complaint was filed to the date that the judgment is satisfied. Integrity was given credit for the $20,000 it had paid plaintiffs before the lawsuit was filed and for the $229,368.95 paid to Bruno Tassoni. The judge ordered that the interest be computed in the following manner:

| | |
|---|---|
| Judgment amount | $297,405.00 |
| Less advance before filing date (July 3, 1982) | ($ 20,000.00) |
| | $227,405.00 |
| Interest 7/3/82 to 7/3/83 | $ 33,288.60 |
| | $310,693.60 |
| Interest 7/3/83 to 11/29/83 | $ 15,220.35 |
| | $325,913.95 |
| Less Payment made 11/29/83 (to Bruno Tassoni) | ($229,368.95) |
| | $ 96,545.00 |
| Interest 11/29/83 to 7/3/84 | $ 6,887.58 |
| | $103,432.58 |
| Interest 7/3/84 to 7/3/85 | $ 12,441.91 |
| | $115,844.49 |
| Interest 7/3/85 to date of payment | $_____ |

Integrity now appeals the district court's judgment, alleging three points of error. First, Integrity claims that the court erred in granting plaintiffs' motion for a partial new trial on the issue of fraud and false swearing. Next, Integrity asserts that the district court's instructions on the burden of proof on the issue of fraud were in error. Finally, it claims that the court erred in ordering it to pay interest on the $229,368.95 it had paid to the titleholder in November 1983.

**I.**

"In a diversity case, the question of whether a new trial is to be granted is a federal procedural question and is to be decided by reference to federal law." *Toth v. Yoder Co.*, 749 F.2d 1190, 1197 (6th Cir.1984). "Federal law leaves the decision of whether to reject a jury's verdict to the sound discretion of the trial judge." *Williams v. Union Carbide Corp.*, 790 F.2d 552, 554 (6th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 591, 93 L.Ed.2d 592 (1986). A judge's decision will not be reversed absent an abuse of discretion. *Toth,* 749 F.2d at 1197; *Bruner v. Dunaway,* 684 F.2d 422, 425 (6th Cir.1982), *cert. denied,* 459 U.S. 1171, 103 S.Ct. 816, 74 L.Ed.2d 1014 (1983). Traditionally, appellate courts have been reluctant to overturn a trial court's order granting a new trial. Indeed, this court has noted that "there are few cases where an appellate court has reversed a decision of a district court in either granting or denying a motion for a new trial based on the ground that the verdict was against the weight of the evidence." *Duncan v. Duncan,* 377 F.2d 49, 53 (6th Cir.), *cert. denied,* 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967). However, there is not "a complete lack of precedent for such action." *Id.*

Integrity contends that the jury's original verdict finding that the plaintiffs had made a fraudulent claim was supported by sufficient evidence and should not have been overturned by the trial judge. Integrity asserts that the fact that the plaintiffs claimed that the insured property had an actual cash value of $622,221.93, when its

true value was approximately half that amount, and the fact that the plaintiffs claimed a $28,000 business interruption loss, when the business was deeply in debt and operating at a loss, establishes fraudulent intent on the part of the plaintiffs.

Under Michigan law, in order to avoid or defeat a claim under an insurance policy such as the one at issue here, the insurer must prove that the insured actually intended to defraud the insurer. *West v. Farm Bureau Ins. Co.*, 402 Mich. 67, 69 (1977). "An exaggeration of the value as a mere opinion, a mere misstatement based upon an erroneous estimate of value, an honest mistake, an innocent overvaluation, lack the essential element of fraud and do not operate to avoid the policy." *Campbell v. Great Lakes Ins. Co.*, 228 Mich. 636, 638, 200 N.W. 457 (1924). In some instances, an insured's fraudulent intent may be inferred from the extreme disparity between the proof of loss and the actual loss. *Rayis v. Shelby Mutual Ins. Co.*, 80 Mich.App. 387, 264 N.W.2d 5, 7–8 n. 3 (1978). *See also Cooper v. Firemen's Ins. Co.*, 148 F.2d 337 (6th Cir.1945).

After considering all of the evidence, the district court concluded that the evidence presented at the trial was not sufficient to prove that the plaintiffs' claim had been made with fraudulent intent, and ordered a new trial. Integrity contends that this was an abuse of discretion. We disagree.

Our review of the record reveals that Integrity failed to produce sufficient affirmative proof that the plaintiffs intended to commit fraud. Integrity's claim of fraud revolves largely around what it perceives to be an overvaluation of the property by the plaintiffs. However, Integrity presented no independent evidence of the value of the property. Instead, Integrity sought to discredit the plaintiffs' valuation. The strongest evidence Integrity produced in this regard was the fact that the plaintiffs had apparently entered into an agreement to sell the property for approximately one half of what they claimed it was worth. Although this does call plaintiffs' valuation into question, it is not enough to prove that the plaintiffs' *intentionally* overvalued the

property in an attempt to defraud the insurance company. Additionally, the method employed by the public adjuster to value the property—replacement cost, less depreciation—has been widely used and is considered an acceptable method of determining actual cash value. *See Davis v. National American Ins. Co.*, 78 Mich.App. 225, 233, 259 N.W.2d 433 (1977). Integrity failed to prove that this method of valuation was improperly or incorrectly used in this instance.

Integrity also sought to prove fraud by virtue of the fact that the plaintiffs filed a claim for loss due to business interruption despite the fact that their business was operating at a loss at the time of the fire. This, too, is insufficient to show intent to defraud. Both of the expert witnesses who testified with regard to the business interruption claim determined that recovery could be had under this provision; they disagreed only as to the amount that could be recovered. Furthermore, neither expert testified that a business showing an annual loss is precluded from recovering under this provision. The business interruption provision of the policy does not provide that recovery will be allowed *only* when the business is profitable. A business losing money might well lose even more if its business is interrupted, thus suffering a true loss from business interruption. Accordingly, a business that is losing money may still legitimately file a business interruption claim.

Since Integrity failed to provide the necessary proof of intent to commit fraud, the trial court properly overturned the jury's verdict. The court's order granting a partial new trial was not an abuse of discretion.

## II.

Integrity also claims that the jury instructions given by the trial court were erroneous because they required Integrity to prove fraud by clear and convincing evidence. Integrity contends that the court's instructions were contrary to established Michigan law that allows fraud to be

proved by a preponderance of the evidence. "In reviewing a federal district court's charge to the jury in a diversity action, it is well settled that the substance of the instructions is controlled by the applicable state law...." *Batesole v. Stratford*, 505 F.2d 804, 807 (6th Cir.1974). Under Michigan law, if substantial error exists in a jury instruction, and a party is prejudiced by the instructions, the appellate court must grant a new trial. *See, e.g., Camden Fire Ins. Co. v. Kaminski*, 352 Mich. 507, 90 N.W.2d 685, 687 (1958).

In *Disner v. Westinghouse Elec. Corp.*, 726 F.2d 1106, 1111 (6th Cir.1984), this court noted that "Michigan requires that fraud be established by clear and convincing evidence." In reaching this conclusion, this court relied on the case of *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 247 N.W.2d 813 (1976). where the Michigan Supreme Court stated that "[f]raud will not be presumed but must be proven by clear, satisfactory and convincing evidence." *Id.* 247 N.W.2d at 816. The *Disner* court noted that although the burden of proof in most civil cases is preponderance of the evidence, a higher standard of proof is applicable to fraud "because of the 'risk of error' and the 'importance of the interests' involved in fraud litigation." *Disner*, 726 F.2d at 1111. The court reasoned that because evidence of fraud is often circumstantial, and claims of fraud can be easily fabricated, there is a high risk that one will be erroneously found to have committed fraud. The court also noted that there is a great risk that one's reputation may be tarnished by a false accusation of fraud.

■■■ Integrity seeks to distinguish the case at bar from *Disner* by claiming that the allegation of fraud in this case is being used as an affirmative defense rather than as an attempt to void an entire contract as in *Disner*. Integrity contends that when fraud is imposed as an affirmative defense, the party asserting it need only prove it by

a preponderance of the evidence. Jury instructions that have provided that an affirmative defense of fraud has to be proved by a preponderance of the evidence have been approved by the Michigan Supreme Court. *See J.B. Millet Co. v. Andrews*, 175 Mich. 350, 141 N.W. 578, 583 (Mich.1913); *Campbell v. Great Lakes Ins. Co.*, 228 Mich. 636, 200 N.W. 457, 459 (1924). Integrity urges that we follow these cases and ignore *Disner*. We are unable to do so. In *Disner*, this court extensively surveyed Michigan law with regard to the burden of proof for fraud and reached the conclusion that the burden was clear and convincing evidence. In so doing, this court implicitly concluded that those Michigan cases that allowed fraud to be proved by the preponderance of the evidence were no longer controlling. The court made no pronouncement with regard to whether different standards of proof are applicable depending on whether fraud is used as an affirmative defense or forms the basis of a legal complaint. Integrity urges us to distinguish the instant case from *Disner* on this basis. We decline to do so. We are unable to find any legitimate reason to establish that different burdens of proof are mandated depending on how the assertion of fraud is used. Indeed, we are convinced that the policy considerations advanced by this court in *Disner* for requiring a higher burden of proof for fraud are applicable in *every* case involving fraud. Accordingly, we rule that the jury instructions given by the judge were not erroneous under Michigan law.

### III.

Integrity also challenges the manner in which the district judge assessed interest on the final judgment.[2] The jury returned a verdict awarding the plaintiffs $297,-405.00. Before assessing interest on this award, the judge first subtracted the $20,-000 advanced to the plaintiffs by Integrity prior to the lawsuit's initiation. The judge then assessed interest at 12% per annum on

---

2. The judge awarded interest pursuant to M.C.L. § 600.6013(4) (West 1985 Supp.), which provides that: "For complaints filed on or after June 1, 1980, interest shall be calculated from

the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually...."

the remaining $277,405.00 from July 3, 1982, the day the lawsuit was filed, until November 29, 1983, the day that Integrity settled with the titleholder by paying him $229,368.95. The judge then subtracted the amount paid to the titleholder from the total judgment, and assessed interest on the balance due until the time of satisfaction.

Integrity contends that no interest should have been awarded on the amount paid to the titleholder prior to the entry of judgment. Integrity asserts that the district court should have subtracted the amount paid to the titleholder, as well as the amount previously advanced to the plaintiffs, and assessed interest only on the net amount awarded to the plaintiffs ($48,036.05). The plaintiffs counter that the judge's assessment of interest on the amount paid the titleholder was correct because at the time Integrity settled with the titleholder, it only paid him the principal due on the claim. Consequently, interest remained due on the $229,568.95.

We reverse the district court's assessment of interest insofar as it awards interest on the $229,568.95 paid to the titleholder prior to judgment. The plaintiffs have no legal right to interest on that portion of the judgment because they had no legal right to the money paid to the titleholder by Integrity. The only party with any legal right to interest on that portion of the award is the titleholder. The titleholder, however, waived his right to interest when he signed the release as part of his settlement with Integrity. If we were to affirm the district court's award of interest in its entirety, the plaintiffs would receive a windfall because they would be receiving interest on money not due them.

Accordingly, we AFFIRM the district court's order granting a new trial. We also AFFIRM the judgment entered on the jury's verdict following the second trial. However, we REVERSE the district court's assessment of interest insofar as it awards plaintiffs interest on money paid to the titleholder prior to judgment and REMAND the case to the district court for a recomputation of interest in accordance with this opinion.