J.C. WYCKOFF & ASSOCIATES, INC., Plaintiff–Appellant (89–1773)/Cross–Appellee,

Second National Bank of Saginaw, Intervening Plaintiff–Appellee (89–1822),

Ann Arbor Leasing, Inc., Intervening Plaintiff,

v.

The STANDARD FIRE INSURANCE COMPANY, Defendant–Appellee/ Cross–Appellant (89–1823) and Appellant (89–1822).

Nos. 89–1773, 89–1822 and 89–1823.

United States Court of Appeals, Sixth Circuit.

Argued March 27, 1991.

Decided June 20, 1991.

Rehearing and Rehearing En Banc Denied Aug. 2, 1991.

Roland J. Jersevic, Crane & Crane, and Timothy R. McLeod, and Susan J. Tarrant, Polasky, Meisel, Rosenbaum & McLeod, Saginaw, Mich., for J.C. Wyckoff & Associates, Inc.

Susan M. Cook (argued) and David L. Powers, Lambert, Leser, Dahm, Giunta, Cook & Schmidt, Bay City, Mich., for Second Nat. Bank of Saginaw, a Nat. Banking Ass'n.

Michael V. Marston, Rice, Rice, Gilbert & Marston, Detroit, Mich., for Ann Arbor Leasing, Inc.

Charles Tuffley (argued), Daryl G. Fryxell, Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, and Judith A. Friday, Southfield, Mich., for the Standard Fire Ins. Co.

Before MARTIN and GUY, Circuit Judges; and EDWARDS, Senior Circuit Judge.

RALPH B. GUY, Jr., Circuit Judge.

Plaintiff, J.C. Wyckoff & Associates, Inc. (Wyckoff), commenced this suit in order to recover proceeds under a fire insurance policy issued by defendant, The Standard Fire Insurance Company (Standard Fire).[1] The policy named intervening plaintiff, Second National Bank of Saginaw (the Bank), a lender of money to Wyckoff, under a loss payable clause. Standard Fire refused to pay proceeds to either the Bank or Wyckoff, claiming that Wyckoff committed arson and fraud and false swearing, thus barring recovery under the policy by either the Bank or Wyckoff. Standard Fire maintained that, because the Bank was named under a loss payable endorsement rather than a standard mortgage endorsement, the Bank's right to recover was contingent upon Wyckoff's right to recover. After a trial on the issue of Standard Fire's liability to Wyckoff, the jury rendered a verdict against Standard Fire on the arson defense and in favor of Standard Fire on the fraud and false swearing defense. Upon cross motions for summary judgment filed by the Bank and Standard Fire, the district court held that the jury verdict did not bar recovery by the Bank for outstanding loans made to Wyckoff and secured by real estate and personal property covered under the policy. The Bank's claim regarding the amount of judgment was subsequently resolved pursuant to a stipulation entered into between the Bank and Standard Fire.[2]

Wyckoff raises numerous claims of error on appeal: (1) the trial court erred in denying Wyckoff's motions for directed verdict and judgment notwithstanding the verdict, as proof of reliance is required to sustain a claim of fraud and false swearing in Michigan, and Standard Fire admits that there was no reliance; (2) the issue of whether reliance is a necessary element of fraud and false swearing should have been certified for decision to the Michigan Supreme Court; (3) even assuming that proof of reliance is not required, the district court should have granted plaintiff's motion for judgment notwithstanding the verdict because there was not sufficient evidence of fraud and false swearing to submit the issue to the jury; (4) because the jury's verdict was against the great weight of the evidence, the district court erred in denying plaintiff's motion for a new trial; (5) disputes over the value of lost property should have been referred to arbitration as provided by the policy; (6) the district court erred by allowing Standard Fire to amend at trial its allegations of fraud; and (7) the court erred by allowing Standard Fire to deduct loan payments, made by Wyckoff to the Bank subsequent to the fire, from insurance proceeds due the Bank under the insurance policy.

Standard Fire cross appeals, arguing that (1) the trial court erroneously excluded evidence regarding locked doors within the Wyckoff buildings, thereby prejudicing Standard Fire's ability to effectively present an arson defense; and (2) the trial court erred by ruling that Standard Fire was estopped from relying upon a loss payable clause in the policy as a basis for denying the Bank recovery.

For the reasons set forth below, we affirm the district court in all respects.

## I.

On July 3, 1983, a fire occurred at the property of Wyckoff, a corporation wholly

---

1. Although the complaint originally named Aetna Casualty & Surety Company, the actual insurer of the policy, as defendant, the parties have stipulated that for purposes of this lawsuit Standard Fire and Aetna Casualty are the same entity.

2. Ann Arbor Leasing, Inc., an entity that leased equipment to Wyckoff, had also been permitted to intervene for the purpose of protecting its interest in any insurance proceeds paid to Wyckoff. Judgment was entered denying any recovery by Ann Arbor Leasing, and that judgment has not been appealed.

owned by James Wyckoff and comprised of a number of separate divisions, including a fund raising division, a fruit division, and a family portrait division. In both 1977 and 1980, Wyckoff granted mortgages to the Bank in order to secure loans for the construction of two buildings. The mortgages required Wyckoff to insure the buildings against damage and loss by fire, as directed by the Bank. At each loan closing, a letter was given to James Wyckoff, president of Wyckoff, Inc., requiring Wyckoff to obtain an insurance policy containing a "standard mortgage clause and provide that loss, if any, shall be payable to" the Bank.[3] In July 1981, Wyckoff granted the Bank a security interest in Wyckoff's machinery and equipment. Although Wyckoff agreed to keep the collateral insured, the exact manner in which the Bank's interest in the collateral was to be indicated on the insurance policy was not specified.

According to the testimony of Kenneth Tobias, the Bank's loan officer, the mortgage officer in charge of the closing on a loan would review the declaration page of the policy to look for the name of the Bank as mortgagee on the face of the policy or check the attached endorsements to determine whether the proper endorsement naming the Bank as mortgagee was contained therein. Subsequent to the closing of a mortgage, the monitoring of insurance was done primarily by the service department of the Bank, which would receive all notices with regard to the insurance policies of mortgagors, including notices of cancellation, non-renewal, terminations, reinstatements, or renewals. When a policy was renewed, if a clerk received a certificate rather than a policy, and the certificate indicated that the Bank was properly in-

cluded as a mortgagee in the policy, a copy of the policy normally would not be required.

From July 1, 1980, until June 30, 1982, Wyckoff was insured against loss or damage to its buildings and their contents through a policy issued by Frankenmuth Mutual Insurance Company (Frankenmuth policy). A certificate of insurance, which contained separate boxes for "Mortgagee," "Loss Payee," and "Additional Insured," indicated that the Bank's interest was that of "Mortgagee." An endorsement to the insurance policy also listed the Bank's interest under a "Mortgage Clause," which indicates that the Bank, when entitled to the protections of the clause, shall not be subject to any act of negligence of the mortgagor or owner.

In early 1982, Wyckoff decided to change insurance agents and contacted William Westwood of the Westwood Insurance Agency, a duly authorized agent of Standard Fire. James Wyckoff did not specifically discuss his secured creditors' insurance requirements with Westwood. However, both Westwood and James Wyckoff agree that it was communicated to Westwood that the Bank had real estate mortgages and a secured interest in personal property, and that Westwood was aware of the Bank's mortgages and secured claim when he prepared for Wyckoff a policy procured from Standard Fire. Both Westwood and James Wyckoff testified that it was their mutual intention to protect the Bank's interest as mortgagee and secured lender. Further, James Wyckoff handed Westwood a copy of the Frankenmuth policy and instructed Westwood to "duplicate or improve upon" the coverage provided by

---

**3.** A mortgagee can protect his interest in the mortgaged property either by obtaining his own insurance or by seeking the inclusion of a clause in the mortgagor's property insurance policy. These latter clauses, which for purposes of simplicity will be generically referred to as "mortgagee clauses," do not operate as an assignment of the insurance policy. Rather, they function as an agreement between the insurer and the parties as to the method by which the policy's proceeds are to be distributed in the event of a loss. 10A *Couch Cyclopedia of Insurance Law 2d* § 42:684 (Rev. ed.).

Mortgage clauses can be segregated into two principal categories. The first group, known as "loss payable clauses," provide that the proceeds of the policy shall be paid first to the mortgagee, to the extent of his interest. The second group, often referred to as "standard mortgage clauses," are more specific in that they also provide that the mortgagee shall be protected against loss due to any act or neglect of the mortgagor. *Id.* at § 42:682.

that policy. Although Westwood only recalls receiving parts of the policy, he testified that he was sure he had access to the entire policy.

Concerning his duty as an insurance agent to Wyckoff, Westwood testified that he thought he should provide at least the coverage Wyckoff had before unless, for some reason, Wyckoff should not have had that coverage. Westwood testified that a standard mortgage clause endorsement for the Bank could have been included without any additional premium and could have provided protection for personal property as well. Westwood further testified that there was nothing to preclude him from placing the Bank's name in two endorsements, with a standard mortgage clause for real estate and a loss payable clause for contents. Westwood stated that he could not see any reason for or benefit to an insured to have a lender who is secured by real estate named in a loss payable clause instead of a standard mortgage clause.

The 1982 Standard Fire policy obtained by Wyckoff from Westwood had a policy period effective from July 1, 1982, to July 1, 1983. Subsequent to the effective date of the new policy, Wyckoff's secretary requested Westwood to provide the Bank with evidence of insurance. In accordance with this request, Westwood sent a certificate of insurance to the Bank on July 27, 1982. The certificate stated that the Bank was "indicated on the policy as mortgagee on building and contents." However, Wyckoff had not yet been issued a policy at the time the certificate was transmitted to the Bank, nor did the policy contain any endorsements naming secured lenders when it was finally prepared in Standard Fire's office in September 1982 and thereafter received by Westwood who transmitted it to Wyckoff.

In November 1982, Westwood sent a memo to Standard Fire requesting that endorsements be added to the policy, listing the Bank and various other lenders under a loss payable clause. Westwood received these endorsements and mailed copies only to Wyckoff; the Bank never received a copy of the insurance policy. Although the policy listed the Bank as a loss payee and not under a standard mortgage clause, Westwood testified that he did not know that the endorsement for the Bank in the Standard Fire policy differed from the way the Bank was endorsed in the Frankenmuth policy.

On May 20, 1983, Westwood met with James Wyckoff to discuss a renewal policy. They reviewed coverage and discussed changes unrelated to the insurable interests of other entities, and Wyckoff thereafter ordered a renewal policy requesting two changes unrelated to the manner in which lien holders or lessees were to be protected under the insurance coverage. Westwood testified that no change was requested and none was discussed with regard to the Bank's interest. The renewal policy was issued in June 1983, with the Bank once again named under a loss payable endorsement. Two days after the effective date of July 1, 1983, the insured property was destroyed.

At the time of the fire, the outstanding balance on the real estate mortgage and commercial loans were $241,000 and $292,-000, respectively. Two buildings referred to as the "south building" and the "north building" were damaged by fires of separate origin. These buildings were connected by a hallway or corridor. The north building and its office equipment also suffered damage from acts of vandalism.

In August 1983, Wyckoff submitted a proof of loss to Standard Fire, claiming $420,000 for loss of buildings; $435,000 for loss of contents; $65,000 for loss of cameras owned by one of its divisions, Julie's Family Portraits; and a claim for an undetermined amount of lost earnings. Standard Fire denied the claim on October 12, 1983, on the bases of arson and fraud and false swearing relative to the origin of the fire.[4] Wyckoff filed for Chapter 11 bank-

4. The letter set forth the reasons for denial as follows:

1. The fire was [procured] to be set by you or by persons in [privity] with you, and or with

ruptcy within a few days and responded to Standard Fire's denial of the insurance claim two months later by filing the underlying suit claiming breach of contract. Standard Fire answered with the same defenses to liability set forth in the denial letter but asserted new theories of fraud and false swearing:

The plaintiff's claim under the said policy is barred as a result of fraud and false swearing and the misrepresentation and concealment of material facts by its president and sole stockholder, including but not limited to the cause and origin of the fire, the financial condition of the plaintiff and the proposed sale of a division of the said business.

Standard Fire later amended its defenses by adding new theories of fraud in the final joint pretrial statement agreed to by the parties. In addition to the defense of arson, Standard Fire's claim of fraud read as follows:

(2) J.C. WYCKOFF & ASSOCIATES, INC., has concealed and misrepresented material facts and is guilty of fraud and false swearing relative to the cause and origin of the fire, its claimed business interruption loss, the value of personal property destroyed by the fire, its financial condition, its relationship with SECOND NATIONAL BANK and the status of its negotiations for the sale of Julie's Family Portraits.

Following the denial of Wyckoff's claim, the Bank asserted its own claim for insurance proceeds under Wyckoff's insurance policy with Standard Fire. Standard Fire denied the Bank's claim on the basis that, as a loss payee, the Bank's right to recovery was subject to all defenses available to Standard Fire against the named insured. The Bank then sought and was granted leave to intervene as a plaintiff in the action filed by Wyckoff.

A trial on the breach of contract action commenced. Standard Fire introduced evidence that Wyckoff made a claim in the

your knowledge and permission, and therefore your claims under the policy are barred.
2. Your claims under the policy are barred, as a result of fraud and false swearing and the

sworn statement in proof of loss for $38,563.80 for 180 boxes of brochures allegedly destroyed that were not damaged, but which were removed from the fire scene to a pole barn behind his house after the fire. James Wyckoff disputed this. However, his testimony was contradicted by three of plaintiff's employees, and one employee witness testified that the brochures were later brought back from the pole barn and used as promotional materials. Testimony was also presented that Wyckoff claimed outdated calendars and other obsolete materials as lost inventory. Evidence was introduced that equipment was valued with no deduction for depreciation and in contradiction of plaintiff's own financial statements. In addition, Standard Fire introduced evidence indicating that Wyckoff misrepresented its financial condition, the nature of its relationship and loan status with the Bank, and the status of negotiations for the sale of Julie's Family Portraits.

At the close of trial, the district court instructed the jury on the elements of fraud as follows:

In order to establish that the policy is void on the grounds of misrepresentation, concealment, fraud or false swearing on the part of the plaintiff, the defendant has the burden of proof by clear and convincing evidence that the plaintiff:
1. Made a statement,
2. Such statement was false,
3. Such statement was material,
4. That the plaintiff knew the representation was false at the time it was made, or that it was made recklessly without any knowledge of its truth, and
5. The false representation was made with the intention of deceiving the defendant.

The jury returned a special verdict, finding that Wyckoff's contents loss was $300,000, that the camera loss was $35,000, that

misrepresentation and concealment of material facts relating to the cause and [origin] of the fire.

the plaintiff did not cause the fire, and that Wyckoff had committed fraud and false swearing. The result of the jury's verdict was to void the policy and to release Standard Fire from liability to Wyckoff.[5]

At the end of trial, Wyckoff moved for judgment notwithstanding the verdict, arguing that, in order to sustain a defense of fraud and false swearing in Michigan, Standard Fire must rely on the alleged misrepresentations made by the insured and suffer prejudice as a result of that reliance. As an alternative ground for judgment notwithstanding the verdict, Wyckoff argued that, assuming *arguendo* that the elements of fraud do not include reliance and prejudice, there was not sufficient evidence of fraud and false swearing to submit the issue to the jury.[6] Plaintiff further argued that the court should grant a new trial on the basis that the subsequent verdict was against the clear weight of the evidence. The district court denied plaintiff's motions for a judgment notwithstanding the verdict and for a new trial.

Standard Fire moved for summary judgment on the Bank's claim, and the Bank filed a cross-motion for summary judgment, contending that Standard Fire was estopped from denying liability to the Bank.[7] After a hearing, the district court granted the Bank's motion for summary judgment and denied the motion for summary judgment filed by Standard Fire. Upon determining that the jury verdict did not bar recovery by the Bank, the court held that judgment should be entered in favor of the Bank for an amount not to exceed the lesser of the following: (1) the outstanding amount of the Bank's loan as secured by the real estate loan, notwithstanding that the Bank may have had additional security; (2) the value of the destroyed property; and (3) the amount of the insurance policy. The Bank then brought a motion for summary judgment to determine the amount due, alleging $565,191.02 as the amount due and owing by Wyckoff as of the date of the motion. This amount was calculated by beginning with the amount due at the time of the fire, deducting $246,830.85 in payments made by Wyckoff since the date of the fire, and adding accrued interest on the unpaid amounts. The Bank's claim was resolved pursuant to stipulation between the Bank and Standard Fire, and a judgment awarding the Bank $560,000 plus post-judgment interest was entered.

## II.

◼ In federal court diversity cases, this circuit adheres to the minority rule that state law governs the standard for granting motions for directed verdicts and judgments notwithstanding the verdict. *Fitzgerald v. Great Central Ins. Co.*, 842 F.2d 157, 159 (6th Cir.1988); *Lewis Refrigeration Co. v. Sawyer Fruit, Vegetable & Cold Storage Co.*, 709 F.2d 427, 430 n. 3 (6th Cir.1983). Although appellate courts should exercise considerable restraint in

---

**5.** The insurance policy contained the standard policy language relevant to fraud and false swearing that is provided by Michigan statute:

This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the insured therein, or in case of any fraud or false swearing by the insured relating thereto.

Mich.Comp.Laws Ann. § 500.2832.

**6.** At the close of defendant's proofs, plaintiff moved for directed verdict on the fraud and false swearing claim, alleging insufficiency of the evidence. The district court denied the motion.

**7.** The Bank also asserted before the district court, and reasserts here, other theories upon which a grant of summary judgment could be

based, including that it is entitled to reformation of the policy and that a loss payee is not barred from recovery due to the fraud of another. The district court declined to address the reformation argument. It did, however, address the Bank's theory that rights under a loss payable clause cannot be defeated by fraud and false swearing that occurs *after* the loss due to the fact that the rights of parties to a fire insurance policy are fixed as of the time of the fire. The district court ultimately rejected this theory. We need not review this portion of the decision or address the reformation theory because we affirm the summary judgment on the basis that Standard Fire was estopped from denying that the Bank's interests are protected under a standard mortgage clause.

overruling jury determinations, they should not ignore their responsibility to insure that the evidence presented at trial permits juries to draw the reasonable inferences supporting such determinations. *Kupkowski v. Avis Ford, Inc.*, 395 Mich. 155, 168, 235 N.W.2d 324 (1975). In Michigan,

> [a] judgment notwithstanding the verdict is appropriate only if the evidence is insufficient as a matter of law to support a judgment for the nonmoving party. When deciding a motion for judgment notwithstanding the verdict, the court must view the evidence in a light most favorable to the nonmoving party, giving the nonmoving party the benefit of every reasonable inference that could be drawn from the evidence. If the evidence is such that reasonable persons could differ, the question is one for the jury and judgment notwithstanding the verdict is improper.[8]

*Slanga v. Detroit*, 152 Mich.App. 220, 224, 393 N.W.2d 487 (1986) (citations omitted), *remanded for reconsideration on other grounds*, 429 Mich. 893, 417 N.W.2d 479 (1988). *See also Sabraw v. Michigan Millers Mut. Ins. Co.*, 87 Mich.App. 568, 571, 274 N.W.2d 838 (1978), *rev'd on other grounds sub nom. Smith v. Allendale Mut. Ins. Co.*, 410 Mich. 685, 303 N.W.2d 702 (1981).

■ When ruling on a motion for judgment notwithstanding the verdict, if the court concludes that evidence on an element necessary to establishing a cause of action or affirmative defense is lacking, then as a matter of law the claim or defense is not an appropriate one for the jury's consideration. *See Smith*, 410 Mich. at 715, 768, 303 N.W.2d 702. Thus, if plaintiff is correct that reliance is an essential element for establishing the section 500.2832 defense of fraud and false swearing, then defendant's admission that there was no reliance would mean that the evidence was insufficient as a matter of law to support the jury's judgment.[9]

■ A court of appeals must review *de novo* a district court's determination of state law, and no form of appellate deference is acceptable when *de novo* review is compelled. *Salve Regina College v. Russell*, — U.S. —, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). Until *Russell*, we consistently held that "the judgment of a local district judge sitting in a diversity case, as to the application of state law, is entitled to considerable deference." *Diggs v. Pepsi-Cola Metro. Bottling Co.*, 861 F.2d 914, 927 (6th Cir.1988). However, the Supreme Court concluded in *Russell* that, although a majority of the courts of appeals had embraced a similar rule of deference, appellate deference on legal issues was not warranted by the exercise of diversity jurisdiction and was actually inconsistent with the principles of cooperative judicial federalism

8. Similarly, a trial court may grant a directed verdict only if it concludes, after viewing all the evidence in the light most favorable to the nonmoving party, that "all reasonable men would agree that there has been an essential failure of proof." *Rhea v. Massey-Ferguson, Inc.*, 767 F.2d 266, 269 (6th Cir.1985) (quoting *Snider v. Bob Thibodeau Ford, Inc.*, 42 Mich.App. 708, 712, 202 N.W.2d 727 (1972)).

9. Defendant does not dispute plaintiff's assertion that there was no reliance, but merely argues that reliance is not an essential element of its affirmative defense. If defendant's factual allegations included reliance, and if that fact was in dispute, then, in addition to determining whether sufficient evidence of reliance required submission of the issue to the jury, we would also be faced with the question whether the district judge's jury instructions misled the jury by not including reliance as an element necessary for establishing fraud. A judgment can be reversed if the instructions, viewed as a whole, were confusing, misleading, and prejudicial. *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72–73 (6th Cir.1990); *see also Camden Fire Ins. Co. v. Kaminski*, 352 Mich. 507, 90 N.W.2d 685 (1958) (if substantial error exists in instructions and party is thereby prejudiced, the appellate court must grant a new trial). Because defendant does not allege reliance, and because the substance of the court's charge to the jury in a diversity action is controlled by state law, *D.R.C.D.T., Inc. v. Integrity Ins. Co.*, 816 F.2d 273, 278 (6th Cir.1987), the inquiry we conduct here in order to determine whether defendant has failed on an essential element of proof—whether Michigan law requires reliance in order to establish fraud and false swearing—is necessarily the same inquiry for determining whether the jury instructions were erroneous and prejudicial. Thus, we will not consider separately the propriety of the district court's jury instructions.

underlying *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny. Applying the *de novo* standard of review mandated by *Russell,* we conclude that the district court, after a considered analysis of Michigan law, correctly resolved the issue of state law presented in the instant case.[10]

When faced with precisely the same question presented here—whether it must be shown that the claimed false statements or misrepresentations were relied upon by the insurer to its prejudice or damage before recovery may be barred under the standard statutory policy of Mich.Comp. Laws § 500.2832—a panel of the Michigan Court of Appeals answered in the negative. *Ijames v. Republic Ins. Co.,* 33 Mich.App. 541, 542, 190 N.W.2d 366 (1971). The *Ijames* court and the district court in this case relied upon the Michigan Supreme Court's holding in *Monaghan v. Agricultural Fire Ins. Co.,* 53 Mich. 238, 18 N.W. 797 (1884). *Ijames,* 33 Mich.App. at 546, 190 N.W.2d 366. *Monaghan* interpreted a forfeiture provision in a fire insur-

ance contract and held that "[t]he *attempt to defraud* the company by any one of the insured, by the making of false affidavits in relation to loss, is a complete bar to a recovery upon the policy." *Monaghan,* 53 Mich. at 253–54, 18 N.W. 797 (emphasis added).[11] The district court interpreted the phrase "attempt to defraud" as requiring neither a showing of reliance nor a showing of prejudice on the part of the insurer when the insured intentionally and willfully makes a false statement relative to loss.

Plaintiff points out that in another early case the state supreme court stated that "[t]o sustain a defense of fraud because of misrepresentation or false statements in an insurance contract, it must be shown that the insurer was prejudiced or damaged by such conduct." *Bernadich v. Bernadich,* 287 Mich. 137, 143, 283 N.W. 5 (1938).[12] However, a panel of the Michigan Court of Appeals later cited *Bernadich* for the proposition that justifiable reliance, although necessary to prove the defense of fraud in the procurement of insurance coverage, is

---

**10.** We also deny plaintiff's request that we certify for resolution to the Michigan Supreme Court the question whether reliance is an element of the section 500.2832 defense of false swearing. Certification to the state court rests within the sound discretion of the federal court, *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974), and is unnecessary where we find, as we do here, controlling Michigan law on the issue sought to be certified.

**11.** *Monaghan* dealt with the following policy provision:

[A]ny neglect to comply with these provisions, or any misrepresentation or concealment or fraud or false swearing in any statement or affidavit in relation to loss or damage, shall forfeit all claim upon the company, by virtue of this policy, and shall be a full bar to all remedies upon the same[.]

*Monaghan,* 53 Mich. at 254, 18 N.W. 797. Although the *Monaghan* decision was later limited by *Morgan v. Cincinnati Ins. Co.,* 411 Mich. 267, 276, 307 N.W.2d 53, 411 Mich. 267 (1981), the issue in *Morgan* involved the question whether section 500.2832 created a joint obligation of suretyship such that the fraud of one insured could bar recovery by another insured who is innocent of fraud. *Morgan* has no application to the case at bar and did not overrule *Monaghan's* holding that, where a policy provision bars recovery in the event of false swearing, an

insured who attempts a fraud is barred from recovery.

**12.** *Bernadich* quoted the general rule for actionable fraud, which contained the elements of reliance and injury:

The general rule is that to constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. Each of these facts must be proved with a reasonable degree of certainty, and all of them must be found to exist; the absence of any one of them is fatal to a recovery.

*Bernadich,* 287 Mich. at 143, 283 N.W. 5 (quoting *Candler v. Heigho,* 208 Mich. 115, 121, 175 N.W. 141 (1919)). Although it is undisputed that there must be reliance upon a representation to make the misrepresentation actionable, *Hi–Way Motor Co. v. International Harvester Co.,* 398 Mich. 330, 247 N.W.2d 813 (1976), this does not automatically mean that reliance is required where fraud is alleged as an affirmative defense to a breach of contract claim, and the contract provides, as it does here, that it is void in the event of false swearing related to the subject of the contract.

nevertheless not an element of a policy defense based upon an alleged fraudulent proof of loss. *Rayis v. Shelby Mut. Ins. Co.*, 80 Mich.App. 387, 392–93, 264 N.W.2d 5 (1978);[13] *see also Kelly's Auto Parts, No. 1, Inc. v. Boughton*, 809 F.2d 1247, 1256 (6th Cir.1987) (Michigan cases concerning insurance fraud distinguish between procurement of insurance and proof of loss). Although a fair reading of *Bernadich* raises the question whether it truly makes the distinction purported by *Rayis*,[14] such a reading is not without merit, as the *Bernadich* reference to reliance and prejudice concerns "false statements *in an insurance contract.*" *Bernadich*, 287 Mich. at 143, 283 N.W. 5 (emphasis added).

■■■ Although it is possible to read *Bernadich* differently than the *Rayis* panel, "we are bound by what we believe Michigan courts would do, rather than what we may think personally would be the re-sult most harmonious with the state statute." *Diggs*, 861 F.2d at 927. An intermediate appellate court's judgment that announces a rule of law is "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Woodruff v. Tomlin*, 616 F.2d 924, 929 (6th Cir.) (quoting *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940)), *cert. denied*, 449 U.S. 888, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980). In addition to the explicit pronouncements of *Ijames* and *Rayis*, other panels of the Michigan Court of Appeals have implicitly reached the same result by upholding jury instructions on fraud or false swearing that lack the elements of reliance and prejudice.[15] Therefore, we remain unconvinced that we should disregard the holdings of *Ijames*

**13.** *Rayis* cites *West v. Farm Bureau Mutual Insurance Co.*, 63 Mich.App. 279, 282, 234 N.W.2d 485 (1975), *rev'd*, 402 Mich. 67, 259 N.W.2d 556 (1977), which characterized the elements of fraud required to void a policy under section 500.2832 in the same manner as did the district court in the case at bar. *Rayis*, 80 Mich.App. at 393, 264 N.W.2d 5. Upon appeal of *West*, the Michigan Supreme Court was presented with the question whether the insurance company must show that it relied on the alleged misrepresentation or was damaged by it. The court declined to consider that question, disposing of the appeal on other grounds. *West*, 402 Mich. 67, 70 n. 7, 259 N.W.2d 556 (1977).

**14.** The distinction is, at best, implied, as *Bernadich* only involved false statements made by an insured after a third party made a claim on the insured's automobile insurance policy. The fraudulent procurement of insurance was not an issue. However, in affirming the denial of a motion notwithstanding the verdict, the *Bernadich* court merely sustained the jury's finding that the defendant had not *"attempted"* to perpetrate a fraud," and the court did not apply the evidence to the various elements of fraud. *Bernadich*, 287 Mich. at 143, 283 N.W. 5 (emphasis added). The decision could be read as considering reliance and prejudice as factors independent of the defense of fraud, perhaps as an alternative basis for the holding, for affirmance was on the ground "that defendant was not guilty of any fraud in making the various statements to the insurance company, *and* that no damage or prejudice to the company resulted therefrom." *Id.* at 142, 146, 283 N.W. 5 (emphasis added).

Whether this is an appropriate reading is difficult to ascertain as the insurance company in that case denied liability on the basis that the insured failed to cooperate in securing evidence *and* on the basis of false reports. The court's analysis appears to have merged the two defenses when discussing them, and although subsequent to *Bernadich* Michigan courts have required a showing of reliance and prejudice when voiding a policy for non-cooperation, *see Allen v. Cheatum*, 351 Mich. 585, 595, 88 N.W.2d 306 (1958), no similar conclusion obtains when viewing decisions that address fraud. Although a panel of the Michigan Court of Appeals cited *Bernadich* for the proposition that a fire insurance policy may not be voided due to misrepresentations or false statements where the insurer was not prejudiced, *Gibson v. Group Ins. Co.*, 142 Mich.App. 271, 276, 369 N.W.2d 484 (1985), the central issue in *Gibson* was not fraud but whether the plaintiff substantially performed his contractual obligation to cooperate with the investigation by failing to submit to examination. *Id.*

**15.** *See Tiefenthal v. Citizens' Mut. Fire Ins. Co.*, 53 Mich. 306, 309–10, 19 N.W. 9 (1884); *Campbell v. Great Lakes Ins. Co.*, 228 Mich. 636, 640, 200 N.W. 457 (1924). In addition, without specifically addressing reliance, federal decisions applying Michigan law have approved charges to the jury that do not contain the element of reliance. *Kelly's Auto Parts*, 809 F.2d at 1255–56; *Westchester Fire Ins. Co. v. Hanley*, 284 F.2d 409, 414–15 (6th Cir.1960), *cert. denied*, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 860 (1961).

and *Rayis.*[16]

■ Plaintiff argues in the alternative that, even assuming proof of reliance is not required to establish the affirmative defense of fraud and false swearing, the evidence was insufficient to submit this defense to the jury.[17] Plaintiff argues that the difference between the jury verdict, which pegged the contents loss and camera loss at $300,000 and $35,000 respectively, and Wyckoff's proof of loss claiming $435,000 for contents and $65,000 for the camera, is not sufficient to support a verdict for fraud and false swearing. To accept plaintiff's alternative argument, this court would have to conclude that there was no way a reasonable jury, looking at the defendant's evidence, could have found in defendant's favor.

There are two reasons why this court cannot adopt the plaintiff's interpretation of the evidence. First, plaintiff perceives the evidence as establishing only that Wyckoff made an honest mistake or innocent overvaluation. Although the cases relied on by plaintiff say that fraud is not established by the mere fact that plaintiff's loss is determined to be less than his stated claim, they are simply saying that the overvaluation, to void a policy under a forfei-

ture provision triggered by fraud, must be made with the intent to deceive the insurer. *See Foreman v. Badger Mut. Ins. Co.,* 169 Mich.App. 772, 776, 426 N.W.2d 808 (1988); *West v. Farm Bureau Mut. Ins. Co.,* 402 Mich. 67, 69, 259 N.W.2d 556 (1977); *Campbell v. Great Lakes Ins. Co.,* 228 Mich. 636, 638, 200 N.W. 457 (1924). Although the case should not be submitted to the jury "[i]f the difference between the proof of loss and actual loss is negligible," if "the difference [is] extreme, fraud may be inferred by law and the judge may direct a verdict for the insurer." *Rayis,* 80 Mich.App. at 392 n. 3, 264 N.W.2d 5 (plaintiff's claim for $60,000 and appraiser's value at $11,800 created a jury question). We find the disparity in this case more than negligible and sufficient to place the question of intent before the jury. Where it is within the competence of the jury to determine whether Wyckoff's misrepresentations were made in good faith or with the intent to deceive, and the jury was properly instructed on this element,[18] we will not disturb its verdict on the basis of the argument that the overvaluation was small.

■ The second problem with Wyckoff's argument is that evidence of fraud and false swearing unrelated to overvalua-

16. Our decision should not be construed as holding that reliance would never be required before an insurance contract can be repudiated pursuant to a forfeiture provision similar to the one presented in section 500.2832. For example, "[w]here, disregarding the proof of loss, the insurer makes an adjustment with the insured, in which the proof of loss is not a factor, no reasonable construction of the contract, or view of its purpose, could permit the insurer to repudiate its agreed adjustment and hark back to the proof of loss." *Alma State Savings Bank v. Springfield Fire & Marine Ins. Co.,* 268 Mich. 631, 635, 256 N.W. 573 (1934). In *Alma State,* the proof of loss was not filed before the adjustment was made and, thus, was never examined until after the insurer agreed to the amount of loss.

Such is not the case here, where Standard Fire commenced an investigation of Wyckoff's claim based upon his proof of loss and denied the claim when it believed the claim to be contrary to the facts. Put another way, insofar as *Alma State* requires the insurer to be misled by a proof of loss, when Wyckoff submitted his proof of loss and Standard Fire proceeded to process and investigate his claim according to

the information provided in the proof of loss, Standard Fire thereby "relied upon" Wyckoff's statements even though it subsequently denied his claim. We see no reason why Standard Fire must incur the "injury" of paying what it believes to be a fraudulent claim before it can properly claim fraud. Such a result would deny the forfeiture provision of section 500.2832 any reasonable force and effect.

17. Plaintiff also argues, in the context of its argument appealing the denial of its motion for a new trial, that the subsequent verdict was against the great weight of the evidence. Because we review this argument according to a different standard of review, we will address it separately, *infra,* from the appeal of the court's order denying a judgment notwithstanding a verdict.

18. The court instructed the jury that the defendant has the burden of proving that the "false representation was made with the intention of deceiving the defendant," and that "a false claim regarding a small portion of the loss may not result in a forfeiture of the coverage unless the insured is shown to be clearly culpable."

tion was submitted to the jury, and Wyckoff makes no attempt to challenge the sufficiency of this evidence. Defendant introduced evidence sufficient to support a finding of fraud on several theories, including that Wyckoff claimed property not damaged or destroyed, that the business interruption claim was false, and that Wyckoff misrepresented its financial condition, its relationship with the Bank, and its status of negotiations for the sale of Julie's Family Portraits. We find this evidence, viewed either in conjunction with Wyckoff's overvaluation or independently of the value placed on property actually lost in the fire, sufficient to support the jury's verdict.

### III.

In addition to challenging the sufficiency of the evidence, plaintiff also appeals the denial of its motion for a new trial made on the basis that the verdict was against the great weight of the evidence. Plaintiff essentially restates the challenge to the sufficiency of the evidence that it made in appealing the denial of its motion for judgment notwithstanding the verdict. However, because the task of the district court in ruling upon motions for a new trial challenging the weight of the evidence, as well as the standard for appellate review of such rulings, differs from those utilized for motions challenging the sufficiency of the evidence, we set forth the law guiding our review of this matter.

 One who challenges the weight of the evidence argues that the jury's verdict, although supported by some evidence, is still clearly against the weight of the evidence. Unlike motions for directed verdicts and judgments notwithstanding the verdict, in ruling upon a motion for a new

trial based on the ground that the verdict is against the weight of the evidence, the trial court must compare the opposing proofs, weigh the evidence, and set aside the verdict if it is of the opinion that the verdict is against the clear weight of the evidence. *TCP Indus., Inc. v. Uniroyal, Inc.,* 661 F.2d 542, 546 (6th Cir.1981). It should deny the motion if the verdict is one which could reasonably have been reached, and the verdict should not be considered unreasonable simply because different inferences and conclusions could have been drawn or because other results are more reasonable. *Id.*

 Given the discretion of the trial court engaged in this task, as compared to the function of the trial court when ruling on motions for judgment notwithstanding the verdict,[19] appellate courts traditionally have been reluctant to overturn a trial court's order granting or denying a motion for a new trial that is based on the ground that the verdict was against the weight of the evidence. *Duncan v. Duncan,* 377 F.2d 49, 53 (6th Cir.), *cert. denied,* 389 U.S. 913, 88 S.Ct. 239, 19 L.Ed.2d 260 (1967). The deferential standard of review accorded to these orders is articulated in *Logan v. Dayton Hudson Corp.,* 865 F.2d 789 (6th Cir.1989), where we stated:

> Generally, the grant or denial of a new trial is purely within the discretion of the trial court and will not be reversed except upon a showing [of] abuse of discretion. Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment.

*Id.* at 790 (citations omitted).[20]

 The record does not indicate that the district court engaged in the analysis

19. When determining whether the evidence is sufficient, the trial court should not weigh the evidence, evaluate the credibility of witnesses, or substitute its judgment for that of the jury. Rather, the evidence must be viewed in the light most favorable to the party against whom the motion is made. *Morelock v. NCR Corp.,* 586 F.2d 1096, 1104–05 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979).

20. Although, "[i]n a diversity case, the question of whether a new trial is to be granted is a federal procedural question and is to be decided by reference to federal law," *Toth v. Yoder Co.,* 749 F.2d 1190, 1197 (6th Cir.1984), we note that the federal law we reference here is the same as the test used by Michigan courts, which review the issue "on the basis of whether or not the trial court has abused its discretion." *Andrews v. Insurance Co. of North Am.,* 394 Mich. 464, 465, 231 N.W.2d 645 (1975).

**1488**

set forth in *TCP*, as the court's opinion and order denying plaintiff's motions for a JNOV and a new trial only addresses the sufficiency of the evidence and the elements of fraud.[21] However, because the arguments raised in challenging the sufficiency of the evidence, both before the trial court and on appeal, are the same arguments undergirding Wyckoff's claim that the verdict was against the weight of the evidence, and because those arguments do not support the contention that the verdict was unreasonably reached, we affirm the denial of plaintiff's motion for a new trial.

## IV.

Wyckoff raises several arguments concerning the specificity and timing of Standard Fire's defense of fraud and false swearing. First, Wyckoff argues that, pursuant to line 123 through line 128 of Michigan's standard fire policy,[22] the overvaluation issues pertaining to Wyckoff's claimed contents loss and camera loss should never have been presented to the jury and should have been resolved only by arbitration. Acknowledging that section 500.2832 requires "the written demand of either" party in order that a disagreement as to amount of loss be presented to arbitration, Wyckoff attempts to justify its failure to make such a request on the ground that Standard Fire never alleged overvaluation of assets as a basis for fraud until Wyckoff commenced the suit. Essentially, Wyckoff argues that it could not request arbitration of an issue that had not been put in dispute.

Assuming that the amount of loss was not in dispute until after Wyckoff filed the suit, any confusion as to Standard Fire's position on this issue became clear before the trial commenced when the parties agreed to the joint final pretrial statement. In that statement, defendant asserted that

Wyckoff's claim was barred on the basis of fraud and false swearing relative to, *inter alia*, "the value of personal property destroyed by the fire." Although this basis for fraud was not among the affirmative defenses listed in Standard Fire's answer to plaintiff's complaint, Standard Fire did assert the defense of fraud and false swearing with regard to "the cause and origin of the fire, the financial condition of the plaintiff and the proposed sale of a division of the said business." The latter two bases of fraud were asserted in response to plaintiff's claim for loss of earnings in the amount of $400,000, a claim plaintiff eventually dropped, and these bases place in dispute the value of that claim.

Where Wyckoff knew that overvaluation was in dispute before the trial commenced, we see no reason to allow Wyckoff to take its chances with the jury and then raise the argument, apparently for the first time on appeal, that had it known overvaluation was an issue it would have asked that the issue be submitted to arbitration rather than to the jury. Issues not presented to the district court but raised for the first time on appeal are not properly before the court. *Boone Coal & Timber Co. v. Polan*, 787 F.2d 1056, 1064 (6th Cir.1986). Furthermore, "[s]ince the appraisal process does not resolve any question of liability of an insurer but merely resolves the amount of losses suffered by the insured," *American Auto. Ins. Co. v. Kevreson*, 131 Mich. App. 759, 763, 347 N.W.2d 1 (1984), appraisal is not a condition precedent to asserting a liability defense based on fraud and false swearing related to the claimed value of loss.

## V.

Wyckoff also argues that once an insurance company denies a claim on certain grounds, it is bound to those defenses and

---

21. Concerning the alleged insufficiency of the evidence, the district court's memorandum opinion references the reasons stated on the record at trial in ruling on the motion for a directed verdict.

22. The relevant portion of the policy reads:

In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand.
Mich.Comp.Laws Ann. § 500.2832.

is estopped from raising defenses not asserted in the denial letter. Therefore, according to Wyckoff, the trial court erred by allowing Standard Fire to defend liability at trial on the basis of fraud and false swearing regarding the value of losses claimed by Wyckoff, when the fraud alleged in the denial letter asserted false swearing only with regard to the origin of the fire. Wyckoff contends that although Standard Fire's answer to plaintiff's complaint added the defenses of fraud and false swearing regarding plaintiff's financial condition and the proposed sale of a division of the business (Julie's Family Portraits), and although these pleadings were subsequently supplemented by further assertions of fraud in the joint final pretrial statement (business interruption loss, value of property destroyed, relationship with the Bank), this manner of amending the proofs is improper and constitutes reversible error under Michigan insurance law.

Wyckoff further contends that Standard Fire was allowed to present testimony at trial to support the theory that items which had not actually been destroyed by the fire were claimed on the proof of loss. The trial court committed error by not excluding this evidence and then submitting the issue to the jury, according to Wyckoff, as the assertion that undamaged items had been claimed does not appear anywhere in the pleadings or pretrial statement, and thus violates the notice requirements of Federal Rule of Civil Procedure 9(b) that "the circumstances constituting fraud or mistake shall be stated with particularity."

■ The short answer to plaintiff's arguments is that issues not presented to the district court but raised for the first time on appeal are not properly before this court. *Boone Coal*, 787 F.2d at 1064. With one exception, which we shall address in due course, plaintiff makes no claim and points to no portion of the record indicating that these arguments were presented to the trial court.

■ However, even assuming the issue is properly before us, we reject plaintiff's contention that allowing Standard Fire to amend its proofs was improper. It

is entirely appropriate to allow a party to amend its theories to conform to the evidence, particularly where the evidence is under the control of another party. *See Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir.1988). Plaintiff correctly asserts that, ordinarily, a denial of liability on specified grounds constitutes a waiver and estoppel of other defenses. *Martinek v. Firemen's Ins. Co.*, 247 Mich. 188, 191, 225 N.W. 527 (1929). However, "[w]aiver and estoppel are founded upon [defendant's] knowledge of facts." *Id.* Permission to add a new defense by amendment is within the discretion of the trial court, *Villamor v. Premier Ins. Co.*, 13 Mich.App. 30, 33, 163 N.W.2d 697 (1968), and where the denial letter alleged fraud with respect to the origin of the fire and Standard Fire subsequently became aware of other instances of fraud during discovery, we find no abuse of discretion in allowing Standard Fire to plead additional grounds of fraud in its answer and in the final pretrial order.

■ Rule 9(b) requires that the circumstances of fraud be pled with enough particularity to put the party on notice as to the nature of the claim, *Michaels Bldg.*, 848 F.2d at 680, and Standard Fire sufficiently stated its claims in the joint pretrial statement so as to meet that requirement. Even assuming the allegation—that Wyckoff falsely claimed undamaged items—does not fall within the ambit of defendant's claim that Wyckoff falsely stated "the value of personal property destroyed by the fire," we find no abuse of discretion in permitting the issue to be tried and submitted to the jury where plaintiff was not taken by surprise or prejudiced by the failure to plead. *See Mason v. Hunter*, 534 F.2d 822, 825 (8th Cir.1976). Plaintiff was aware of the issue and implicitly consented to its litigation by agreeing to the joint pretrial statement, which listed "[t]he extent of loss suffered by the contents" among the issues of fact to be litigated, and by failing to object to the jury instruction that the policy is void if plaintiff "claimed [that] property was damaged or destroyed, when, in fact, the property was

not damaged or destroyed by the fire." Indeed, plaintiff points to no portion of the record where it asserted at any time an objection to the testimony concerning undamaged items.

The only portion of the testimony to which plaintiff objected (the only time that it asserted the various pleading arguments that it now asserts) concerned the introduction of testimony on Wyckoff's claim for loss of earnings due to business interruption. Plaintiff argued that, although Wyckoff claimed an undetermined loss for business interruption when filing its proof of loss, it never placed a dollar amount on that loss until it filed suit against Standard Fire. The basis of plaintiff's objection was that acts of fraud occurring after the denial of a claim cannot be asserted as grounds for denying the claim.[23] The trial court overruled the objection on the basis that one cannot avoid a charge of fraud by falsely claiming lost earnings and waiting until later to place a value on that loss. We find nothing prejudicial to plaintiff in this ruling, and, insofar as Wyckoff is correct that fraud committed subsequent to a claim's denial is not a basis for defending liability on a claim, the jury was instructed in accordance with this principle.[24]

## VI.

Wyckoff contests the consent judgment that the Bank shall recover $560,000 plus post-judgment interest from Standard Fire in satisfaction of the Bank's direct claims against Standard Fire. Plaintiff argues that Standard Fire should have to pay the amount due and owing at the time of the fire, and that Wyckoff's partial payment of the debt during the period between the fire and the date when payment was finally made by Standard Fire to the Bank should not affect the amount owed by Standard Fire. Wyckoff asserts that if Stan-

dard Fire had not contested the claim and had paid the Bank immediately under the policy, the $246,830.85 paid by Wyckoff to the Bank could have been used to pay creditors. By allowing the insurer credit for payments made by Wyckoff, the court, contends Wyckoff, is allowing Standard Fire to reap a windfall by virtue of its delay in paying the claim. Wyckoff contends that it is not attempting to assert its own rights under the policy, but is only attempting, as a debtor-in-possession, to obtain for the Bank what should have been paid initially by Standard Fire and to protect the rights of Wyckoff's unsecured creditors.

Although defendant argues that Wyckoff lacks standing to appeal the terms of the consent decree to which it is not a party, we choose nonetheless to address the merits of the issue raised by plaintiff. In light of the fact that we find plaintiff's claims without merit, our assumption in favor of standing for plaintiff is without consequence and should not be construed as a decision on the merits of the standing issue.

Wyckoff's argument rests upon the premise that the parties should be put in the position they would have been had Standard Fire paid the Bank promptly after the loss. It is true, as plaintiff argues, that Michigan courts have held that the amount due from an insurer is fixed as of the date of the fire. In *Root v. Republic Insurance Co.*, 82 Mich.App. 446, 452, 266 N.W.2d 842 (1978), the Michigan Court of Appeals ruled that a trial court correctly awarded damages against an insurance company based upon the balance due on a land contract as of the date of a fire, without crediting the insurer with subsequent payments made on the land contract by the purchaser. In *Root*, a land contract vendor was named under a Michigan stan-

---

**23.** Plaintiff's assertion here, that events *occurring* subsequent to the denial of a claim cannot form the basis of a defense to liability, is distinct from the assertion already addressed, that events occurring prior to denial, but *discovered* after the claim is denied, cannot be used to defend liability.

**24.** After charging the jury on the elements of fraud, the court instructed the jury that "[t]he [false] statement may have involved the business interruption claim, but a false statement, if any, made after the claim was denied and after a lawsuit was commenced, may not be used as a basis for denial of liability for a loss."

dard mortgage clause. After a loss under the policy, the insurance company paid the vendee instead of paying the named vendor. The vendee then absconded, leaving a sizeable balance due on the contract. The trial court awarded the vendor judgment against the insurance company in the full amount due on the land contract as of the date of the fire. The defendant argued "that the trial court erred in awarding damages to plaintiffs based on the balance due on the land contract at the date of the fire and not taking into account subsequent payments by [the vendee] on the land contract." *Root*, 82 Mich.App. at 451–52, 266 N.W.2d 842.

The court rejected this argument, stating that:

> Generally, the rights of the parties to a fire insurance policy are fixed as of the date of the fire. *Booker T Theater Co v. Great American Insurance Co*, 369 Mich. 583; 120 NW2d 776 (1963), *Sietsema v. Freemont [Fremont] Mutual Insurance Co*, 38 Mich App 582; 196 NW2d 841 (1972). *Plaintiffs' possible liability to [vendee] for excess payment under the land contract does not affect defendant's liability to plaintiffs under the insurance contract.*

*Id.* at 452, 266 N.W.2d 842 (emphasis added).

Unlike *Root*, however, we are presented here with a situation where the entity seeking payment under the standard mortgage clause agrees with the insurer as to the amount due to it under the policy. Also unlike *Root*, we face a situation where the wrongdoer seeks to determine defendant's liability to the mortgagee by asserting the mortgagee's potential liability to the wrongdoer for excess payments made by the wrongdoer to the mortgagee. As the United States Bankruptcy Court for the Eastern District of Michigan noted in *In re Light*, 23 B.R. 482 (Bankr.E.D.Mich.1982), allowing a wrongdoer's creditors to recover under an insurance policy ultimately benefits the wrongdoer. *In re Light* held that the debtor's intentional act in setting a fire constituted a complete bar to recovery under an insurance policy by the bankruptcy

trustee because the trustee was not a co-insured but took his interest pursuant to the debtor's interest. Here, the debtor's interest has been extinguished, the debtor having been barred from recovery. Wyckoff, the debtor, should not be permitted to benefit from its wrongful conduct either directly or indirectly.

■ Wyckoff's attempt to distinguish *Light* is unpersuasive. The policy in that case was presumed void because of the insured's wrongful conduct. The mere fact that the fraudulent conduct in *Light* was arson, as opposed to the fraud and false swearing committed by Wyckoff in the present case, is irrelevant. The Michigan courts do not distinguish between fraudulent conduct which causes the loss and fraudulent submission of proofs after a loss has occurred. Both types of fraud completely bar the wrongdoer's right to recover insurance proceeds. *Monaghan v. Agricultural Fire Ins. Co.*, 53 Mich. 238, 253–54, 18 N.W. 797 (1884).

Moreover, the standard mortgage clause contained in the insurance policy issued to Wyckoff provided in pertinent part:

> When the Company shall pay the mortgagee any sum for loss under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, the Company shall, to the extent of such payment, be thereupon legally subrogated to all of the rights of the mortgagee to whom such payment shall have been made, under the mortgage debt. In lieu of taking such subrogation, the Company may, at its option, pay to the mortgagee the whole principal due or to grow due on the mortgage, with interest accrued and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities. . . .

In the present case, Standard Fire has denied that it owes any liability to the mortgagor, Wyckoff. Accordingly, if Standard Fire is required to pay the entire amount owing on the Wyckoff mortgages at the time of the fire, it would be entitled to an assignment of these mortgages from the Bank. As an assignee, Standard Fire would replace the Bank as a secured credi-

tor of Wyckoff, and any amount in excess of the true mortgage debt at the time of payment would be recoverable by Standard Fire, not Wyckoff. Thus, whether Standard Fire receives a credit for the amounts already paid by Wyckoff to reduce the mortgage debt, or whether the difference between the existing debt and the debt at the time of the fire is owed to Standard Fire, the result is the same. Under either scenario, the excess amounts would not be available to Wyckoff or its unsecured creditors.

In *Root*, the insurer did not raise any policy defenses and paid the mortgagor's claim. Because the insurer had admitted liability, the Michigan Court of Appeals ruled that the insurer was not entitled to exercise its subrogation or assignment option and was, therefore, not entitled to a credit of the excess payments made by the mortgagor. As the court stated in *Root:*

> Finally, defendant argues that under the "mortgagee interests and obligations" provision quoted above, it may require an assignment of the land contract on which it has been ordered to pay the balance due. However, the provision relied upon applies only if the insurer claims "no liability *existed*" as to the mortgagor or owner. Here the insurer admitted liability and proceeded through appraisal to fix the amount of liability. On the facts of this case, the insurer is not entitled to subrogation or an assignment.

82 Mich.App. at 452, 266 N.W.2d 842.

In the present case, not only has Standard Fire denied it owed Wyckoff any insurance proceeds, but also a jury has determined that Wyckoff is not entitled to recover under the insurance policy because Wyckoff committed fraud. If Wyckoff had not been found guilty of fraud, an argument could be made under *Root* that Wyckoff is entitled to the difference between the current mortgage debt and the debt outstanding when the loss occurred. Standard Fire, however, owes no liability to Wyckoff in this case. Because Standard Fire has no liability to Wyckoff, it would be entitled to take an assignment of the mortgages from the Bank and would receive the benefit of payments made by Wyckoff since the fire, which have reduced the mortgage debt.

## VII.

Standard Fire argues that the trial court erroneously excluded Scott Riley's testimony regarding locked doors within the Wyckoff buildings, thereby prejudicing Standard Fire's ability to effectively present an arson defense.[25] The testimony at issue was stricken on the grounds that it conflicted with Standard Fire's response to a request for admission and its answer to an interrogatory concerning the kind of evidence it intended to use, and that it unfairly surprised Wyckoff. Because we uphold the jury verdict in favor of Standard Fire on the defense of fraud and false swearing, which serves as a complete defense under section 500.2832, the arson defense is moot and we need not address this evidentiary issue.

## VIII.

■ In the insurance policy in effect at the time of the fire, the Bank is listed in the policy's endorsement under a "Loss Payable Clause."[26] In *Van Buren v. St.*

---

**25.** During the course of the trial, Scott Riley, office manager at Wyckoff, testified that it was necessary to unlock two interior doors in order to give the firemen access to the second fire which had been started in the north building.

**26.** Although the insurance policy in effect at the time of the fire was a renewal policy effective July 1, 1983, that policy did not differ from the 1982 policy on matters relating to the protection of secured parties. Although the renewal of an insurance policy constitutes a separate contract, if an agreement to renew is made and there is no departure from the terms of the original contract, or the policy is issued without calling to the insured's attention a reduction in coverage, the parties are still bound by the provisions of the policy as originally issued. *Industro Motive Corp. v. Morris Agency, Inc.*, 76 Mich.App. 390, 396, 256 N.W.2d 607 (1977); *Aurora Fire & Marine Ins. Co. v. Kranich*, 36 Mich. 289, 294–95 (1877). Consequently, while our discussion focuses on whether Standard Fire is estopped from relying on the loss payee clause in the 1982 policy that expired on June 30, 1983, this discussion applies equally to the renewal policy.

Joseph County Village Fire Insurance Co., 28 Mich. 398 (1874), the leading case articulating the rights of a "loss payee," the Michigan Supreme Court held that the rights of a mortgagee under a loss payee clause are derived through the insured and "whatever will defeat [the insured's] right of recovery must of necessity defeat any right of the mortgagee." *Id.* at 405. *See also Gallant v. Lake States Mut. Ins. Co.,* 142 Mich.App. 183, 187, 369 N.W.2d 205 (1985) ("Under an open loss clause, the policy is subject to any act or omission of the insured which might void, terminate, or adversely affect coverage. If the policy is not collectible by the insured ... the loss payee also cannot recover.")

In accordance with this authority, Standard Fire argued before the district court that its defense of fraud and false swearing as to Wyckoff's claim, which was established at the jury trial, also applies as to the Bank's claim *qua* loss payee. The Bank, however, argued that, while it may be listed under a loss payable clause, Standard Fire should be estopped from denying that the Bank's interests are protected under a standard mortgage clause. A mortgagee under a standard mortgage clause "is not subject to defenses available to the insurer against the mortgagor," *Cottrell v. Clark,* 126 Mich.App. 276, 280, 337 N.W.2d 58 (1983), and if protected by such a clause the Bank would be entitled to recover under the policy in spite of the jury's finding that Wyckoff committed fraud and false swearing. We adopt the holding of the district court that Standard Fire was estopped from denying the Bank the protection of a standard mortgage clause.

■ The doctrine of equitable estoppel includes three elements and arises when (1) a party, by acts, representations, admissions or silence, intentionally or negligently induces another party to believe facts; (2) the other party justifiably relies and acts on this belief; and (3) will be prejudiced if the first party is permitted to deny the existence of the facts. *Conel Dev., Inc. v. River Rouge Sav. Bank,* 84 Mich.App. 415, 422–23, 269 N.W.2d 621 (1978); *Kole v. Lampen,* 191 Mich. 156, 157–58, 157 N.W. 392 (1916). Where an allegation of estoppel raises factual questions on which reasonable minds might disagree, the questions must be resolved at trial by the trier of fact. *See Conel,* 84 Mich.App. at 423, 269 N.W.2d 621; *Anderson v. Sanders,* 14 Mich.App. 58, 61, 165 N.W.2d 290 (1968). However, where the facts are not in dispute or are beyond dispute, the existence of estoppel is a question of law. *Anderson,* 14 Mich.App. at 61, 165 N.W.2d 290. Thus, in determining the propriety of the district court's grant of summary judgment, the test is whether the undisputed facts establish the elements of estoppel.

The district court held that the Bank justifiably relied on the certificate of insurance as indicating coverage under a standard mortgage clause. Standard Fire does not contest the third element of estoppel but focuses its argument on appeal on the first and second elements. Standard Fire argues that the generic language in the certificate should indicate nothing as to the type of endorsement covering the Bank's interest and that the Bank failed to present evidence establishing reliance on the certificate. According to Standard Fire, the Bank's evidence, at best, creates an issue of fact to be decided by a jury.

■ There are two responses to this argument. First, there is authority for the proposition that the only reliance required in these cases is the insured's reliance on the agent to prepare a policy in accordance with the information and instructions furnished to the agent by the insured. *Johnson v. American Fidelity Fire Ins. Co.,* 351 Mich. 515, 522–23, 88 N.W.2d 913 (1958). It is undisputed that Westwood was given or had access to the Frankenmuth policy naming the Bank in a standard mortgage clause, that he was instructed to duplicate or improve upon that policy, that he knew the Bank was a mortgagee, and that he could have named the Bank in a standard mortgage clause with no additional cost to Wyckoff. Pursuant to *Johnson* and the facts of this case, it is not necessary that the Bank rely specifically on the certificate of insurance for estoppel to be found as a matter of law.

**1494**

[W]here an insurance company has full knowledge of the circumstances involved in the writing of a policy and fails to make the recitals in that policy correspond with the facts, while receiving and retaining the premiums, the insurer is estopped from offering his own incorrect recital of the facts in order to defeat liability.

*Johnson,* 351 Mich. at 521, 88 N.W.2d 913 (citations omitted). *See also North American Fire Ins. Co. v. Throop,* 22 Mich. 146, 158–59 (1871). If Wyckoff's policy had been written according to the instructions given by Wyckoff to Westwood, there would be no question pertaining to the Bank's protection under a standard mortgage clause.[27]

 Standard Fire correctly points out that, generally, the law in Michigan places a duty upon an insured to read the policy and air any discrepancies in coverage within in a reasonable time after issuance of the policy. *Parmet Homes, Inc. v. Republic Ins. Co.,* 111 Mich.App. 140, 145, 314 N.W.2d 453 (1981); *Industro Motive Corp. v. Morris Agency, Inc.,* 76 Mich.App. 390, 396, 256 N.W.2d 607 (1977). However, this rule does not apply when a renewal policy is issued without calling the insured's attention to a reduction in coverage, as the insurer in those circumstances is bound by the greater coverage in the earlier policy. *Id.* This renewal exception applies equally in those circumstances where the insured changes insurers, seeking no more than to

revive coverage identical to its former insurance. *Id.* Cf. *Western Casualty & Sur. Co. v. Sliter,* 555 F.Supp. 369, 370 (E.D.Mich.1983). We find these principles of law applicable here.[28]

 The second response to Standard Fire's argument is that, even assuming the Bank must establish reliance upon the certificate itself, we find the elements of estoppel satisfied. The certificate included the following language: "Certificate Holder is indicated on the policy as mortgagee on building & contents."

 Due to the ambiguity of the term "mortgagee" and the rules of construction for insurance policies and certificates of insurance, the district court construed the certificate as representing the Bank's interests to be protected by a standard mortgage clause. We accept the district court's reasoning on this issue:

Many property insurance policies contain provisions that purport to protect secured creditors' interests against loss, *Couch,* § 42.682. "Such clauses have been variously denominated as the 'mortgage clause,' the 'mortgagee clause,' the 'standard clause,' the 'standard mortgage clause,' the 'standard mortgagee clause,' the 'union clause,' the 'union mortgagee clause,' the 'loss-payable clause,' and the 'ordinary' or 'open-mortgage clause.'" *Id.* Thus, secured creditors listed under these various clauses could be described as "mortgagees,"

27. Standard Fire argues that it and Westwood had no duty to advise Wyckoff regarding the availability of a standard mortgage clause or the adequacy of a loss payable clause. Standard Fire cites *Bruner v. League General Insurance Co.,* 164 Mich.App. 28, 31, 416 N.W.2d 318 (1987), which held that, absent a special relationship, an insurance agent does not have an affirmative duty to advise a client regarding the adequacy of a policy's coverage. Standard Fire's reliance on *Bruner* and the cases cited therein is misplaced, for in *Bruner,* unlike *Johnson* and the case at bar, there was no uncontroverted allegation that the plaintiff requested the defendant to provide the protection that was being denied post-claim. *Id.* at 34, 416 N.W.2d 318.

28. The Michigan appeals court decisions cited herein draw their authority from an early Mi-

chigan Supreme Court decision that speaks directly to the circumstances presented here. Westwood did not use a written application, but simply relied on approximately 70 pages of handwritten notes and the oral instructions of Wyckoff, including the instruction to duplicate and improve upon the Frankenmuth policy that protected the Bank's interests with a standard mortgage clause. In *Gristock v. Royal Insurance Co.,* 87 Mich. 428, 430, 49 N.W. 634 (1891), the Michigan Supreme Court observed:

Plaintiff had a right to rely upon the assumption that his policy would be in accordance with the terms of his oral application. If the defendant [insured] desired to make it anything different, it should, in order to make it binding upon plaintiff, under the authorities in this State, have called his attention to those clauses which differed from the oral application....

"standard mortgagees," "union mortgagees," "loss-payees," "ordinary mortgagees," or "open-mortgagees." The bald reference in the certificate to "mortgagee," therefore, does not meaningfully inform the Bank that its rights are less than as a standard mortgagee. The term is decidedly ambiguous. Since any doubts or ambiguity with respect to a certificate of insurance should be construed most favorably to the insured, *see Freeman v. Massachusetts Mut. Life Ins. Co.*, 27 Mich.App. 572, 580 [183 N.W.2d 832] (1970), the Court finds that the term "mortgagee" refers to a standard mortgage clause.

*Wyckoff v. Standard Fire Ins. Co.*, No. 86–CV–10367–BC, slip op. at 7–8 (E.D.Mich. Nov. 10, 1988).

Contesting the district court's finding that the term "mortgagee" is ambiguous, Standard Fire argues that the Bank should be held to the technical construction of terms used in transactions within the Bank's field of expertise. *See Boyd v. General Motors Acceptance Corp.*, 162 Mich.App. 446, 456–57, 413 N.W.2d 683 (1987) (quoting Restatement (Second) of Contracts § 202(3)(b)) ("technical terms and words of art are given their technical meaning when used in transaction within their technical field."). Standard Fire argues that the term "mortgagee" does not identify either a standard mortgage endorsement or a loss payable endorsement but merely describes the nature of the lender's interest in the insured property, and the term should indicate nothing to a sophisticated commercial lender as to the type of endorsement that covers its interest.

In addition to proffering a technical meaning that lends itself to ambiguity, the meaning Standard Fire offers is contrary to its own use of "mortgagee" in the policy issued to Wyckoff. Standard Fire lists both "loss payee" and "mortgagee" as separate and distinct entities on page four, a policy change endorsement; this conflicts with the assertion that the term "mortgagee" is inclusive of lenders protected under either loss payable or standard mortgage clauses. Further, in its standard mortgage provision, referred to as "the Mortgage Clause" on page 12 of Wyckoff's 1982 policy, Standard Fire uses the term "mortgagee" to describe the entity covered by that provision.

For estoppel to apply, the Bank also must have relied upon the representation in the certificate, and Standard Fire argues that the Bank's evidence, that it routinely monitored policies and certificates of insurance for the language "mortgagee," does not demonstrate that the Bank relied upon the certificate as indicating coverage under a standard mortgage clause. However, it is not necessary that affirmative action be taken in reliance on the representations; nonaction in reliance, resulting in injury, is sufficient. *Hetchler v. American Life Ins. Co.*, 266 Mich. 608, 614, 254 N.W. 221 (1934). "It is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss." *Id.* Further, reliance need not be proved by direct evidence but may be inferred from the circumstances. *Hetchler*, 266 Mich. at 614, 254 N.W. 221; *see also United States v. United States Trust Co.*, 660 F.Supp. 1085, 1088 (D.Mass.1986) (fact inferred on the basis of undisputed routine business practice).

Although the Bank failed to produce any witness to testify that on a certain date and time he or she read the certificate and relied upon its representations, the Bank produced evidence, not disputed by Standard Fire, that it followed a routine procedure of monitoring policies, renewal notices, and certificates of insurance for the language "mortgagee." If these documents failed to identify the Bank as a mortgagee, Tobias, the Bank's loan officer, would be notified and the mortgagor would be contacted and directed to bring his or her insurance policy into compliance with the Bank's lending requirements, which include the requirement that its interest be listed under a standard mortgage clause. The district court could properly accept the uncontroverted evidence of the Bank's rou-

tine practice as establishing reliance for purposes of ruling on the motion for summary judgment.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge, dissenting.

This case involves some questionable pleading tactics by the appellee, Standard Fire Insurance Company, which at the very least cause me to wonder about the propriety of their fraud defense. The majority seemingly endorses these tactics which but for a final pre-trial statement run completely afoul of all the rules and age-old policy restrictions concerning claims of fraud. F.R.Civ.P. 8(c), 9(c). In addition, the last minute addition of the completely new claim of fraud in the proofs of loss contravenes the rule limiting insurance companies to only those defenses raised in the original denial of coverage. *Martinek v. Firemen's Ins. Co.*, 247 Mich. 188, 225 N.W. 527 (1929).

Yet, even more disconcerting is the court's determination, in the absence of any contemporary ruling from the Supreme Court of Michigan, that a defense of "attempted fraud" now permits an insurance company to deny coverage to their paying customers. *See,* M.C.L. 500.2832 The statutorily designed standard fire policy in Michigan, though, seems to void coverage only for acts amounting to actual fraud. M.C.L. 500.2832; *D.R.C.D.T., Inc. v. Integrity Ins. Co.*, 816 F.2d 273 (6th Cir.1987). Moreover, the provisions of insurance contracts are strictly construed in Michigan to protect the interests of the insured, *the policyholder,* and forfeiture clauses are disfavored. *In re Certified Question, Ford Motor Co. v. Lumbermens Mutual Cas. Co.*, 413 Mich. 22, 38, 319 N.W.2d 320 (1982); *Ford Motor Credit Co. v. Aetna Cas. & Sur. Co.*, 717 F.2d 959 (6th Cir. 1983).

In light of these clearly expressed rules of Michigan insurance law, I must respectfully dissent from the judgment of the court affirming the attempted fraud defense. At the very least, there is sufficient confusion concerning the elements of the defense to require certification of the question to the Michigan Supreme Court.